JAMES VENTRES ET AL. *v.* GOODSPEED AIRPORT, LLC, ET AL.

GOODSPEED AIRPORT, LLC, ET AL. *v.* INLAND WETLANDS AND WATERCOURSES COMMISSION OF THE TOWN OF EAST HADDAM ET AL.

GOODSPEED AIRPORT, LLC, ET AL. *v.* EAST HADDAM LAND TRUST, INC., ET AL. (SC 18260)

Rogers, C. J., and Norcott, Palmer, Zarella, McLachlan and Eveleigh, Js.

Argued February 17—officially released June 14, 2011

*Dean M. Cordiano*, with whom were *John R. Bashaw*, *Rene A. Ortega* and, on the brief, *Daniel J. Foster*, for the appellants (Goodspeed Airport, LLC, et al.).

*Kenneth J. McDonnell* and *Alexandria L. Voccio*, with whom, on the brief, was *John J. Radshaw III*, for the appellees (James Ventres et al.).

*Opinion*

McLACHLAN, J. This appeal, which arises from the clear-cutting of trees on land abutting the Goodspeed Airport in the town of East Haddam, illustrates the importance of the doctrines of res judicata and collat-

eral estoppel in safeguarding the principles of the finality of judgments and judicial economy. Goodspeed Airport, LLC (airport), Timothy Mellon and Timothy Evans, doing business as Evans Contracting (collectively, airport parties), appeal[1] from the trial court's summary judgments in favor of the inland wetlands and watercourses commission (commission) of the town of East Haddam (town), James Ventres, the town's zoning enforcement officer, and Randolph Dill, John Gibson, Bryan Goff, Nancy McHone, Wendy Goodfriend and Mary Augustiny, all individual members of the commission, in the three consolidated cases that are at issue in this appeal.[2] The airport parties claim that the trial court improperly concluded that their claims for violations of their rights to substantive and procedural due process, retaliation for the exercise of their first amendment rights and abuse of process were barred by the doctrines of res judicata or collateral estoppel.[3] Because we conclude that all of the claims raised by the airport parties in this appeal are barred by either the doctrine

[1] The airport parties appealed from the decision of the trial court to the Appellate Court and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[2] Because the party designations in the three consolidated cases are complex, for convenience we refer to the parties by name rather than by party status. Ventres and the commission brought the first action (enforcement action) against the airport parties as well as the East Haddam Land Trust, Inc. (land trust) and the Nature Conservancy. The airport parties brought the second action (civil rights action) against the commission, the individual members of the commission, Ventres, the land trust and the individual members of the land trust. The airport and Mellon brought the third action (land trust action) against the land trust, the individual members of the land trust, Ventres and Susan Merrow, the town's former first selectwoman.

On January 12, 2009, the airport parties withdrew all claims against the land trust, the individual members of the land trust and Merrow, who accordingly are not parties to this appeal.

[3] The trial court also addressed the merits of the airport parties' claims sounding in procedural due process, retaliation in violation of the first amendment and abuse of process. Because we conclude that the airport parties are barred from relitigating those claims, it is unnecessary for us to revisit the merits.

of collateral estoppel or the doctrine of res judicata, we affirm the judgments of the trial court.

We set forth the relevant facts in *Ventres* v. *Goodspeed Airport, LLC*, 275 Conn. 105, 881 A.2d 937 (2005), cert. denied, 547 U.S. 1111, 126 S. Ct. 1913, 164 L. Ed. 2d 664 (2006). "The airport is located on Lumberyard Road in [the town]. It is an '[a]irport available for public use' within the meaning of title 14 of the Code of Federal Regulations, § 77.2. Mellon is the sole member of [the airport]. Evans is an independent contractor who has been the manager of the airport since November, 2003, and is responsible for managing its day-to-day activities.

"The airport's southern boundary lies approximately along the centerline of a tidal creek that flows in a westerly direction into the Connecticut River. That boundary forms the northern boundary of property owned by the [East Haddam Land Trust, Inc. (land trust)], which extends for approximately 335 feet to the south, where it abuts property owned by the [Nature Conservancy (conservancy)]. The conservancy's property extends for another 100 feet to the south, at which point it abuts Chapman Pond. The airport has a 2100 foot runway that runs in a north-south direction. The southern end of the runway is approximately 630 feet north of the airport's southern boundary and 1100 feet north of Chapman Pond.

"Between November 29 and December 5, 2000, Evans, at the direction of Mellon and without the permission of the [members of the] land trust . . . cut down all of the trees, bushes and woody vegetation on approximately 2.5 acres of land located between the southern boundary of the airport property and Chapman Pond. Approximately 340 trees were destroyed, including some that were 100 years old and seventy-two feet high. The airport [parties] claim that the trees and vegetation posed a danger to aircraft landing at

and taking off from the runway. The 2.5 acres were entirely within a regulated wetlands area as defined by General Statutes § 22a-38 (15) and were part of a wildlife refuge and nature preserve that extends along the Connecticut River." Id., 110–11.

The airport parties alleged the following additional facts. Over a period of thirty-five years, the airport had periodically removed individual trees on both the airport property and the land trust property in order to maintain the glide path to the runway. In the summer of 1999, the airport informed Ventres that it intended to remove certain trees on the airport property that obstructed the glide path. Ventres informed the airport that it only needed to obtain a letter from the department of transportation authorizing the tree removal. In September, 1999, when the airport cut the identified trees, which were in areas ostensibly regulated by the commission, neither Ventres nor the commission objected.

The airport parties further alleged that they subsequently had informed both Ventres and the land trust that they intended to clear-cut the trees on the land trust property. Ventres did not suggest that they would need a permit from the commission in order to do so. Moreover, according to the airport parties, they had been negotiating with the land trust, seeking an easement that expressly would have permitted them to clear-cut on land trust property, in exchange for which the airport would grant an easement to the land trust for access to the land trust property over the airport property, or provide parking on the airport property to serve the land trust property. Negotiations began to break down in the spring of 2000, and an agreement was never reached.

Following the clear-cutting, the commission met on December 19, 2000, and its members considered possi-

ble responses. Although Ventres notified members of the land trust of the meeting, the commission did not inform any of the airport parties of the meeting, nor did it provide notice of a public hearing regarding possible action in response to the clear-cutting.[4] Following the meeting, the commission authorized the issuance of a cease and desist order prohibiting the airport from engaging in any regulated activity within seventy-five feet of wetlands, on either the airport property, the land trust property or conservancy property. The order specifically noted that the regulated activity had been conducted without obtaining a permit, in violation of commission regulations and state statutes. On January 11, 2001, the commission held a show cause hearing on the order. The airport parties moved to disqualify several members of the commission from participating, arguing that they either were members of the land trust or had demonstrated bias against the airport parties. The hearing was continued to February 28, 2001, at which time three members of the commission recused themselves from the matter. Because the recusals resulted in a lack of a quorum, the commission closed the hearing. Subsequently, the commission, including the members who had disqualified themselves from the show cause hearing, voted to bring a civil action against the airport parties.

A total of six actions have been filed as a result of the clear-cutting. Because what has been litigated—as well as what could have been litigated—is the crucial issue in this appeal, it is helpful to review the complicated procedural history, beginning with a summary of the three consolidated actions at issue in the present appeal, followed by a review of the two prior actions

---

[4] The parties dispute whether notice of a public hearing was required. Because we conclude that the airport parties' claims were procedurally barred, we need not resolve the issue of whether such notice was required.

in federal court.[5] In April, 2001, the commission and Ventres filed the first of the three consolidated actions, the enforcement action, claiming that the clear-cutting had violated inland wetlands regulations and state statutes. Ventres and the commission sought injunctive relief and the imposition of civil penalties against the airport parties.[6] The airport parties counterclaimed, asserting claims sounding in substantive due process, inverse condemnation, abuse of process and absolute nuisance.[7] The trial court, *Sferrazza, J.*, bifurcated the counterclaims and, after a trial to the court on the complaint, rendered judgment in favor of the commission and Ventres.[8] On appeal, this court affirmed the judgment of the trial court. *Ventres* v. *Goodspeed Airport, LLC*, supra, 275 Conn. 161. We concluded that the trial court properly had determined that, although the airport parties had acquired a prescriptive easement over the property owned by the land trust in order to maintain the glide slope to the airport's runway, they had exceeded the scope of that easement by clear-cutting the land. Id., 114–15. We also determined that

[5] A sixth action was brought by Arthur J. Rocque, then commissioner of environmental protection, against the airport parties, alleging that the clear-cutting had violated various state statutes. *Rocque* v. *Mellon*, 275 Conn. 161, 164 n.2, 881 A.2d 972 (2005), cert. denied, 547 U.S. 1111, 126 S. Ct. 1913, 164 L. Ed. 2d 664 (2006). We concluded that the clear-cutting constituted unreasonable pollution, and therefore reversed the trial court's judgment for the airport parties on count one of the complaint alleging unreasonable impairment of wetlands and watercourses in violation of General Statutes § 22a-16. Id., 169–70. We affirmed the judgment in all other respects. Id., 164.

[6] Pursuant to General Statutes § 22a-44 (c), Ventres and the commission also asked the trial court to sentence Mellon and Evans to a six month term of imprisonment.

[7] The airport parties also asserted cross claims against the land trust and the conservancy. Those claims are not at issue in this appeal.

[8] When the trial court bifurcated the counterclaims from the remaining claims in the enforcement action, the airport parties already had instituted the second of these consolidated actions, the civil rights action. The court bifurcated the counterclaims, intending that they would be consolidated with the civil rights action and tried after the remaining claims in the enforcement action had been resolved.

we need not reach the federal preemption question and affirmed the trial court's award of damages. Id., 115. The airport parties' counterclaims alleging the violation of their right to substantive due process and abuse of process as to Ventres and the commission remain at issue in this appeal.

In July, 2001, the airport parties brought the second of the consolidated actions, the civil rights action, against Ventres, the commission and its members, and the land trust and its members, claiming, inter alia, that they had violated the airport parties' right to procedural due process and had retaliated against them for exercising their first amendment rights.[9] Both of those claims are still at issue in this appeal. In January, 2007, the airport and Mellon brought the last of the three consolidated actions, the land trust action, against Ventres, Merrow, the land trust and its members, raising an abuse of process claim against Ventres, which is at issue in this appeal.

In addition to instituting two of the three consolidated actions, the airport and Mellon also brought two federal actions, both of which have concluded. Specifically, in March, 2001, they brought a federal due process action alleging that Ventres, Merrow, the land trust and its members had violated their right to substantive and procedural due process. Their primary claims were that the alleged deprivation of their property effected by the cease and desist order violated their right to procedural due process because of the lack of a hearing, and violated their right to substantive due process because the order was filed in retaliation against the airport parties for a failed business deal. *Goodspeed Airport, LLC* v. *East Haddam Land Trust, Inc.*, United States District

[9] In February, 2004, the trial court rendered summary judgment in favor of Ventres, the commission and its members as to the airport parties' state constitutional claims, but denied the motion for summary judgment as to all other claims. The airport parties do not challenge that judgment on appeal.

Court, Docket No. 3:01CV403 (SRU), 2005 U.S. Dist. LEXIS 11558, *5 (D. Conn. June 13, 2005), aff'd, 166 Fed. Appx. 506 (2d Cir. 2006). Because it was undisputed "that the prohibitions of the cease and desist order [were] no broader than the prohibitions set forth in Connecticut statutes and [commission] regulations"; id., *4; and because the airport parties had not pointed to any evidence that demonstrated that the cease and desist order directly or indirectly restrained the airport from any lawful use of its property, the District Court concluded that the airport parties had failed to establish a question of material fact as to whether the cease and desist order deprived the airport of a constitutionally protected property interest. Id., *18. Accordingly, the court rendered summary judgment in favor of Ventres, Merrow, the land trust and its members. Id.

The airport alone brought the second federal action, a federal preemption action, in June, 2006, against the commission, Ventres and the commissioner of environmental protection,[10] seeking a declaratory judgment that federal aviation law preempted Connecticut environmental laws, including the Inland Wetlands and Watercourses Act, General Statutes §§ 22a-36 through 22a-45, and the Environmental Protection Act of 1971, General Statutes §§ 22a-14 through 22a-20, to the extent that those environmental laws required the airport to obtain a permit before removing trees on regulated land on both the airport property and the land trust property. *Goodspeed Airport, LLC* v. *Inland Wetlands & Watercourses Commission*, 681 F. Sup. 2d 182, 184 (D. Conn. 2010), aff'd, 634 F.3d 206 (2d Cir. 2011). In a decision that has since been affirmed by the United States Court

---

[10] The District Court granted the motion to dismiss filed by the commissioner of environmental protection pursuant to the eleventh amendment to the United States constitution. *Goodspeed Airport, LLC* v. *Inland Wetlands & Watercourses Commission*, 681 F. Sup. 2d 182, 185 (D. Conn. 2010), aff'd, 634 F.3d 206 (2d Cir. 2011).

of Appeals for the Second Circuit, the District Court concluded that the defendant's regulatory actions were not preempted by federal law.[11] Id., 214.

In state court, the civil rights action, the counterclaims in the enforcement action and the land trust action were consolidated by the trial court, *Berger, J.,* for purposes of considering motions for summary judgment that had been filed in all three cases. In granting the motions, the trial court relied on the decision of the District Court in the federal due process action in concluding that: (1) the airport parties' claims for substantive and procedural due process were barred by the doctrines of res judicata or collateral estoppel; and (2) the airport parties' claims for first amendment retaliation and abuse of process were barred by the doctrine of collateral estoppel.[12] This appeal followed.

The airport parties challenge the trial court's judgments with respect to four of its claims: substantive due process, procedural due process, first amendment retaliation and abuse of process. As to each of these four claims, we conclude that either the issues were actually litigated in the federal actions and thus are barred by collateral estoppel, or the claims could have been raised in the federal actions and are barred by res

[11] The airport parties conceded at oral argument before this court that any claim of federal preemption has been "rendered moot" by the District Court's ruling. In their brief to this court, the airport parties relied heavily on the lack of any final determination on the federal preemption question, arguing that, because a court possibly could conclude that state laws and regulations were federally preempted in this instance, the potential interference with federal air safety regulations effected by the cease and desist order justified relitigating the issues of whether the order violated substantive and procedural due process. By conceding that any claim of federal preemption has been rendered moot, the airport parties abandoned this argument.

[12] The trial court also concluded that, even if the airport parties' claims for procedural due process, abuse of process and first amendment retaliation were not procedurally barred, Ventres, Merrow, the commission and its members were entitled to summary judgment on the merits for those claims. The remaining claims resolved by the trial court are not at issue in this appeal.

judicata. Accordingly, we affirm the judgments of the trial court.

Our review of the trial court's decision to render summary judgment is plenary, and in accordance with the standards set forth in Practice Book § 17-49. *Plato Associates, LLC* v. *Environmental Compliance Services, Inc.*, 298 Conn. 852, 862, 9 A.3d 698 (2010). With that standard of review in mind, we first set forth the principles of res judicata and collateral estoppel and then analyze each of the airport parties' claims under those doctrines.

"It is well established that the party asserting the affirmative defense of res judicata bears the burden of establishing its applicability." *Commissioner of Environmental Protection* v. *Connecticut Building Wrecking Co.*, 227 Conn. 175, 195, 629 A.2d 1116 (1993). "Claim preclusion, sometimes referred to as res judicata, and issue preclusion, sometimes referred to as collateral estoppel, are first cousins. Both legal doctrines promote judicial economy by preventing relitigation of issues or claims previously resolved. . . . The concepts of issue preclusion and claim preclusion are simply related ideas on a continuum, differentiated, perhaps by their breadth, and express no more than the fundamental principle that once a matter has been fully and fairly litigated, and finally decided, it comes to rest. . . .

"The subtle difference between claim preclusion and issue preclusion has been so described: [C]laim preclusion prevents a litigant from reasserting a claim that has already been decided on the merits. . . . [I]ssue preclusion, prevents a party from relitigating an issue that has been determined in a prior suit. . . . Under claim preclusion analysis, a claim—that is, a cause of action—includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out

of which the action arose. . . . Moreover, claim preclusion prevents the pursuit of any claims relating to the cause of action which were actually made or *might have been made.*" (Citations omitted; emphasis in original; internal quotation marks omitted.) *LaSalla* v. *Doctor's Associates, Inc.*, 278 Conn. 578, 589–90, 898 A.2d 803 (2006). "In order for collateral estoppel to bar the relitigation of an issue in a later proceeding, the issue concerning which relitigation is sought to be estopped must be identical to the issue decided in the prior proceeding. . . . [T]he court must determine what facts were necessarily determined in the first trial, and must then assess whether the [party] is attempting to relitigate those facts in the second proceeding." (Internal quotation marks omitted.) *New England Estates, LLC* v. *Branford*, 294 Conn. 817, 839, 988 A.2d 229 (2010).

Because the parties to the federal actions and the parties to this appeal are not identical, we review the applicable principles governing who may invoke the doctrines of res judicata and collateral estoppel to preclude an opposing party from relitigating a claim or issue, and who is bound by a prior judgment. With respect to who is bound by a prior judgment, we have stated that "[a]lthough the two doctrines are distinct from each other, both operate only against the same parties or those in privity with them." *Weiss* v. *Statewide Grievance Committee*, 227 Conn. 802, 818, 633 A.2d 282 (1993).[13]

"While it is commonly recognized that privity is difficult to define, the concept exists to ensure that the

---

[13] Because we conclude that all of the parties in the present appeal either were parties to the prior actions or are in privity with parties to those actions, it is unnecessary to distinguish between the applicable rules for parties invoking the doctrines of collateral estoppel and res judicata and parties against whom those doctrines are asserted. See, e.g., *Aetna Casualty & Surety Co.* v. *Jones*, 220 Conn. 285, 300, 596 A.2d 414 (1991) (abandoning mutuality of parties rule).

interests of the party against whom collateral estoppel [or res judicata] is being asserted have been adequately represented because of his purported privity with a party at the initial proceeding. . . . A key consideration in determining the existence of privity is the sharing of the same legal right by the parties allegedly in privity." (Citation omitted; internal quotation marks omitted.) *Aetna Casualty & Surety Co.* v. *Jones*, 220 Conn. 285, 304, 596 A.2d 414 (1991). "In determining whether privity exists, we employ an analysis that focuses on the functional relationships of the parties. Privity is not established by the mere fact that persons may be interested in the same question or in proving or disproving the same set of facts. Rather, it is, in essence, a shorthand statement for the principle that collateral estoppel should be applied only when there exists such an identification in interest of one person with another as to represent the same legal rights so as to justify preclusion." *Mazziotti* v. *Allstate Ins. Co.*, 240 Conn. 799, 814, 695 A.2d 1010 (1997).

Applying these principles to the present appeal requires a degree of untangling. Ventres and the airport are parties to both federal actions and all three of the consolidated actions. See footnote 2 of this opinion (setting forth parties in consolidated actions). In the federal due process action, Mellon and the airport named Ventres, Merrow, the land trust and its members as defendants. In the federal preemption action, the airport alone brought the action against Ventres, the commission and the commissioner of environmental protection. Evans was not a party to either federal action. In the consolidated actions giving rise to this appeal, Mellon, Ventres, the airport and the land trust are parties to all three actions, but the commission and Evans are parties only to the enforcement action and the civil rights action. The members of the commission are parties only in the civil rights action, and the members of the land trust are parties only in the civil rights

action and the land trust action. The parties who seek to invoke the doctrines of collateral estoppel and res judicata are Ventres, the commission and its members. The parties whom they claim are bound by the federal actions are Mellon, the airport and Evans. This summary of the parties in the various actions reveals that we must resolve two questions before turning to the issue of whether the doctrines of res judicata and collateral estoppel are applicable to this appeal. First, we must determine whether the commission and its members may seek the benefit of the doctrine of res judicata with respect to the federal due process action. Second, because he was not a party to either federal action, we must resolve whether Evans may be bound, either by collateral estoppel or res judicata, by the prior litigation. The answer to both of these questions turns primarily on the principles of privity and agency.

Regarding the first question, that is, whether the commission and its members may seek the benefit of the doctrine of res judicata with respect to the federal actions, we first observe that because the commission was a party to the federal preemption action, it may invoke the doctrine as one of the parties to that prior litigation. With respect to the federal due process action and the right of the commission members to rely on the preclusive effect of the judgment in the federal preemption action, the participation of Ventres in both of those actions and the principles of agency and privity entitle the parties to invoke the doctrine.[14] As the trial

---

[14] We are not persuaded by the airport parties' contentions that slight differences in the factual allegations of the complaints in the federal actions and the various state court actions justify a conclusion that Ventres' participation in the federal actions cannot serve to bar the airport parties' claims against the commission. The airport parties have not pointed to any allegations in the federal due process action that negate the conclusion of the trial court in the present consolidated actions that Ventres was acting as the agent of the town at all relevant times giving rise to these actions.

Moreover, the differences on which the airport parties rely are not material to the issues decided by the District Court in the federal due process action and the federal preemption action. Those issues are: the determination in

court pointed out, the question of whether the commission is in privity with Ventres is governed by *Wade's Dairy, Inc.* v. *Fairfield,* 181 Conn. 556, 436 A.2d 24 (1980). In that case, the defendants, the town of Fairfield and its zoning enforcement officer, who had not been parties to prior litigation, argued that the plaintiffs' action was barred by the doctrine of res judicata. In concluding that the defendants were in privity with the zoning board of appeals of the town of Fairfield, which had been a party in the prior litigation, this court reasoned that both the zoning board of appeals and the zoning enforcement officer were agents of the town of Fairfield. Therefore, because "they represent not their own rights but the rights of the municipality the agents of the same municipal corporation are in privity with each other and with the municipality." Id., 561. Similarly, in the present case, Ventres, as the zoning enforcement officer of the town, and the commission and its members are in privity with each other, because they are agents of the same municipal corporation.

We next turn to the question of whether Evans may be bound, either by collateral estoppel or res judicata, by the prior litigation. See footnote 15 of this opinion.

---

the federal due process action that the cease and desist order merely prohibited the airport parties from engaging in already prohibited activity; and the determination in the federal preemption action that the airport's license was not in any way threatened by the actions of Ventres and the commission. We have examined the various complaints, and there is much overlap and some difference between the factual allegations. In determining whether Ventres' participation in the federal actions is sufficient to bar the airport parties from relitigating those issues, we look to the facts that were material to the determination of those issues. Even assuming that the airport parties' characterization of the various actions is correct—that is, that the federal due process action focused more on Ventres' actions prior to the clear-cutting, while the present, consolidated actions have focused more on the commission's procedures following the clear-cutting—those differences are not material to the issue determined by the District Court in the two federal actions, namely, that the airport parties failed to demonstrate that the cease and desist order invaded a protected property interest.

"An agent may be bound by a prior judgment against its principal where the prior action concerned a matter within the scope of the agency." 47 Am. Jur. 2d 183, Judgments § 612 (2006). All of these actions concern the clear-cutting and the response to it. At all times relevant to these consolidated actions, Evans was acting as the agent of Mellon and the airport. Accordingly, he may be bound by the judgments in the two federal actions.

Having concluded that the parties may be bound by the prior litigation, we turn to the claims in each of the actions to determine whether they are in fact precluded from relitigating the issues or claims. In order to prevail on their substantive due process claim or their procedural due process claim, the airport parties must demonstrate that the actions in response to the clear-cutting invaded a constitutionally protected property interest. See *Goodspeed Airport, LLC* v. *East Haddam Land Trust, Inc.*, supra, 2005 U.S. Dist. LEXIS 11558, *6 ("To establish violations of either procedural or substantive due process a plaintiff must first identify a constitutionally protected right that has been violated. *Ciambriello* v. [*Nassau*], 292 F.3d 307, 313 [2d Cir. 2002] [procedural due process]; *Natale* v. [*Ridgefield*], 170 F.3d 258, 263 [2d Cir. 1999] [substantive due process] . . . .").

The airport parties claim that the actions in response to the clear-cutting—namely, issuing the cease and desist order and instituting the enforcement action—invaded two allegedly constitutionally protected property interests: the airport license, and the airport parties' interest in maintaining the airport glide path in compliance with the airport's licensing and federal regulatory obligations. The issue of whether the cease and desist order invaded a protected property interest of the airport parties, however, has been fully and fairly litigated in the two federal actions. In the federal due process action, the airport parties claimed that their right to

substantive and procedural due process had been violated by alleged procedural improprieties in connection with the issuance of the cease and desist order. *Goodspeed Airport, LLC* v. *East Haddam Land Trust, Inc.*, supra, 2005 U.S. Dist. LEXIS 11558, *3–5. The court rejected the due process claims, concluding that the cease and desist order could not, as a matter of law, invade any protected property interest, because it "merely ordered [the airport parties] to refrain from engaging in already prohibited activities." Id., *2.

Additionally, the District Court in the federal preemption action found that the airport had failed to demonstrate that the actions of the commission and Ventres in any way threatened the airport's license, stating: "While . . . Mellon testified that he believes that the airport's license remains under an implicit threat—that either he lower the obstructing trees or the [department of transportation] would revoke the license—the record does not support this supposition. The results of all of the many inspections of [the airport] after 1983 do not contain any suggestion whatsoever that the airport's license is in danger of revocation, even while the trees have continued growing and have reduced the approach to the runway's southern end to a 7-to-1 ratio." *Goodspeed Airport, LLC* v. *Inland Wetlands & Watercourses Commission*, supra, 681 F. Sup. 2d 198.[15]

The airport parties also claim that the enforcement action was "improper and unlawful" and invaded the

---

[15] The District Court's conclusion that the airport had failed to demonstrate that the airport license was threatened by the actions of Ventres and the commission provides a specific illustration of the general conclusion stated by the District Court in the federal due process action, that is, that the airport parties lacked a constitutionally protected property interest. The holding on which we rely for the operation of res judicata and collateral estoppel, however, is the holding in the federal due process action. Therefore, the fact that Mellon was not a party to the federal preemption action has no effect for purposes of the operation of those doctrines. Mellon is bound by the court's holding in the federal due process action.

airport parties' constitutionally protected property interests. That claim has been fully and fairly litigated in the enforcement action before this court. That is, this court's previous affirmance of the trial court's judgment in favor of Ventres and the commission on appeal; *Ventres* v. *Goodspeed Airport, LLC,* supra, 275 Conn. 110; read together with the District Court's conclusion in the federal due process action that the cease and desist order merely prohibited the airport parties from engaging in already prohibited activity and therefore could not serve as a basis for a due process claim; *Goodspeed Airport, LLC* v. *East Haddam Land Trust, Inc.,* supra, 2005 U.S. Dist. LEXIS 11558, *2; collaterally estops the airport parties from relitigating the issue of whether the enforcement action invaded a protected property interest. In affirming the judgment of the trial court in the enforcement action, we arrived at the same conclusion regarding the institution of that action that the District Court had arrived at regarding the cease and desist order. In bringing the enforcement action, Ventres and the commission did not seek to prevent the airport parties from engaging in any activity that was not already forbidden by state statutes and commission regulations. Each of these determinations—that the cease and desist order and the institution of the enforcement action sought merely to bar the airport parties from engaging in already prohibited activities, and that the airport's license was not in any way threatened by these actions—was necessary to the judgment in each of the three prior actions. Therefore, the airport parties are barred from relitigating the issues in asserting violations of their rights to both substantive and procedural due process.

We next consider the airport parties' claim that the filing of the cease and desist order constituted an abuse of process. Because the federal courts did not address the airport parties' stated causes of action, res judicata

is inapplicable to the abuse of process claim. The conclusion of the District Court in the federal due process action that the cease and desist order merely prevented the airport parties from engaging in already prohibited activities, however, collaterally estops the airport parties from relitigating that issue, which is dispositive of their abuse of process claim.

We previously have explained the elements of abuse of process. "Because the tort arises out of the accomplishment of a result that could not be achieved by the proper and successful use of process, the Restatement Second (1977) of Torts, § 682, emphasizes that the gravamen of the action for abuse of process is the use of a legal process . . . against another *primarily* to accomplish a purpose for which it is not designed . . . . Comment [b] to § 682 explains that the addition of primarily is meant to exclude liability when the process is used for the purpose for which it is intended, but there is an incidental motive of spite or an ulterior purpose of benefit to the defendant." (Emphasis in original; internal quotation marks omitted.) *Mozzochi* v. *Beck*, 204 Conn. 490, 494, 529 A.2d 171 (1987).

When deciding whether the employment of a legal process constituted abuse of that process, we have examined the purpose served by the particular process at issue in the case. See, e.g., *Suffield Development Associates Ltd. Partnership* v. *National Loan Investors, L.P.*, 260 Conn. 766, 773, 802 A.2d 44 (2002). In the context of zoning laws, the purpose of a cease and desist order is to order a person who is engaging in activities that are prohibited by state law or the regulations of the inland wetlands commission to cease such activity. General Statutes § 22a-44 (a).[16] The court in

---

[16] General Statutes § 22a-44 (a) provides in relevant part: "If the inland wetlands agency or its duly authorized agent finds that any person is conducting or maintaining any activity, facility or condition which is in violation of sections 22a-36 to 22a-45, inclusive, or of the regulations of the inland wetlands agency, the agency or its duly authorized agent may issue a written

the federal due process action found that the cease and desist order merely ordered the airport parties to refrain from engaging in already prohibited activities—in other words, the order achieved exactly the purpose for which it was intended, and no more.[17] *Goodspeed Airport, LLC* v. *East Haddam Land Trust, Inc.*, supra, 2005 U.S. Dist. LEXIS 11558, *2. That finding has preclusive effect in the present appeal and is dispositive as to the airport parties' abuse of process claim. Any incidental ulterior motive served by the cease and desist order is immaterial. The claim is collaterally estopped.

The airport parties appear to contend that the fact that the District Court concluded that the cease and desist order only barred them from engaging in already prohibited activity does not resolve the abuse of process claim because they have offered evidence of an ulterior motive and have claimed that the ulterior motive was the primary motive for the order. Specifically, the airport parties claim that the order primarily was intended to injure them and to retaliate against them for failing to negotiate successfully with the land trust. The airport parties misunderstand the nature of an abuse of process claim. The cease and desist order was used for its intended purpose: the airport parties were ordered not to engage in prohibited activities. With that issue determined, the airport parties could not have prevailed on their abuse of process claim simply by demonstrating that although the cease and desist order accomplished exactly what it was designed to accomplish, the commission and its members and Ventres, in issuing the

order, by certified mail, to such person conducting such activity or maintaining such facility or condition to cease immediately such activity or to correct such facility or condition. . . ."

[17] In light of the District Court's conclusion, we find unpersuasive the airport parties' contention that the trial court in the present consolidated actions improperly made a factual determination in concluding that the cease and desist order was issued to accomplish a purpose for which it was designed.

order, were not merely spiteful, they were *very* spiteful. In order to prevail, the airport parties would have had to demonstrate that the order was used for a purpose for which it was not designed—the District Court's determination that the order was used for its proper purpose collaterally estopped the airport parties from relitigating the issue.

Finally, we turn to the airport parties' claim that Ventres and the commission had filed the enforcement action in retaliation against the airport parties for engaging in activity protected by the first amendment, namely, filing the motion to disqualify certain members of the commission from the show cause hearing. Because it could have been raised in either of the federal actions, this claim is barred.

Res judicata "prevents the pursuit of any claims relating to the cause of action which were actually made or *might have been made.*" (Emphasis in original; internal quotation marks omitted.) *LaSalla* v. *Doctor's Associates, Inc.*, supra, 278 Conn. 590. The claim that the commission and Ventres violated the airport parties' first amendment rights by allegedly retaliating when the airport parties engaged in constitutionally protected conduct could have been raised in either of the federal actions. The retaliation claim focuses on the actions of both the commission and Ventres, who, as we explained earlier in this opinion, are privies. Ventres was a party to both federal actions, and the commission was a party to the federal preemption action. All of the material facts relevant to the retaliation claim were known to the airport parties when they instituted the federal preemption action. When the airport parties instituted the federal due process action, the commission and Ventres had not yet filed the enforcement action, but had authorized it. Moreover, prior to the time that the District Court rendered summary judgment, the commission and Ventres had filed the enforcement action. Accord-

ingly, the airport parties would have had ample opportunity to raise the first amendment retaliation claim in either of the federal actions. Furthermore, the fact that the commission was not a party in the federal due process action does not prevent the application of res judicata to this claim. The airport parties could have brought the claim against Ventres in either action, or they could have raised the claim against both Ventres and the commission in the federal preemption action. Therefore, res judicata applies and the claim is barred in the present action.

The judgments are affirmed.

In this opinion the other justices concurred.