******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

APPENDIX

# GABRIEL COULOUTE ET AL. *v.* BOARD OF EDUCATION OF THE TOWN OF GLASTONBURY ET AL.*

Superior Court, Judicial District of Hartford
File No. CV-18-6106959-S
Memorandum filed August 29, 2019

*Proceedings*

Memorandum of decision on defendants' motion for summary judgment. *Motion granted.*

*Irving J. Pinsky*, for the plaintiffs.

*Keith R. Rudzik*, for the defendants.

*Opinion*

HON. ROBERT B. SHAPIRO, JUDGE TRIAL REFEREE. Before the court is the defendants' motion for summary judgment (#104). The issue presented is whether the court should grant the defendants' motion on the ground that the action is barred by the doctrine of res judicata. The court heard oral argument at short calendar on July 8, 2019.

I

BACKGROUND

Gabriel Couloute alleges that he suffered a football related concussion from playing football at Glastonbury High School during the 2016–2017 school year. During this time, Gabriel Couloute was a minor. His mother, April Couloute, the coplaintiff in this action, alleges that she incurred damages and losses as a result of her son's medical care. In the plaintiffs'[1] complaint, they allege twenty counts against the defendants, the Board of Education of the Town of Glastonbury; Alan Bookman, Superintendent of Schools for the Glastonbury School District; Nancy E. Bean, Principal of Glastonbury High School; Trish Witkin, athletic director; and Mark Alexander, junior varsity football coach.

Each of the plaintiffs have alleged claims of negligence and recklessness against each of the defendants. The first, fifth, ninth, thirteenth, and seventeenth counts are negligence based claims against each of the defendants for their multitude of various failures arising out of Gabriel Couloute's participation in an October 20, 2016 football practice where he sustained a concussion. In the second, sixth, tenth, fourteenth, and eighteenth counts, Gabriel Couloute brought a recklessness claim against each of the defendants on similar grounds. In the third, seventh, eleventh, fifteenth, and nineteenth counts of the complaint, April Couloute brought a negligence claim against each of the named defendants for damages she incurred for paying for treatment and medical care for Gabriel Couloute. And in the fourth, eighth, twelfth, sixteenth, and twentieth counts of the complaint, April Couloute asserted a claim of recklessness against the defendants.

The defendants moved for summary judgment (#104) on the ground that the doctrine of res judicata bars this action. The defendants claim that the plaintiffs already brought these claims and/or had the opportunity to bring these claims against each of the defendants. The defendants further provide that all the defendants in the first action are the same in the second action with the exception of Mark Alexander, who has been substituted for Scott Daniels in the prior action.[2] In the prior action, April Couloute filed a twenty-four count complaint, on behalf of Gabriel Couloute, against the Glastonbury Board of Education, Bookman, Bean, Witkin, and Daniels. In that first action, counts twenty through

twenty-four were negligence based claims against each of the aforementioned defendants. Ultimately, the prior action was disposed of by a motion to strike in *Couloute* v. *Board of Education*, Superior Court, judicial district of Hartford, Docket No. CV-17-6074140-S (January 5, 2018) (*Shapiro, J.*). The plaintiffs took no further action to replead the complaint. In the present case, the plaintiffs filed papers in opposition (#106). The defendants filed a reply (#107).

## II

### STANDARD OF REVIEW

"Summary judgment is a method of resolving litigation when pleadings, affidavits, and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . The motion for summary judgment is designed to eliminate the delay and expense of litigating an issue when there is no real issue to be tried. . . . However, since litigants ordinarily have a constitutional right to have issues of fact decided by a jury . . . the moving party for summary judgment is held to a strict standard . . . of demonstrating his entitlement to summary judgment." (Citation omitted; footnote omitted; internal quotation marks omitted.) *Grenier* v. *Commissioner of Transportation*, 306 Conn. 523, 534–35, 51 A.3d 367 (2012). "[S]ummary judgment is an appropriate vehicle for raising a claim of res judicata . . . ." (Citations omitted.) *Joe's Pizza, Inc*. v. *Aetna Life & Casualty Co*., 236 Conn. 863, 867 n.8, 675 A.2d 441 (1996). "Because res judicata or collateral estoppel, if raised, may be dispositive of a claim, summary judgment [is] the appropriate method for resolving a claim of res judicata." *Jackson* v. *R. G. Whipple, Inc*., 225 Conn. 705, 712, 627 A.2d 374 (1993).

## III

### DISCUSSION

The defendants argued that the motion for summary judgment should be granted on the ground of res judicata. The plaintiffs countered that summary judgment is inappropriate because, when the first action and the motion to strike were filed, the information they now have was not available to them. The plaintiffs claimed that this lack of information hindered their ability to fairly litigate the matter. Further, the plaintiffs argued that, pursuant to public policy, the court should not apply res judicata to this case.

### A

### Res Judicata

"[T]he doctrine of res judicata, or claim preclusion, [provides that] a former judgment on a claim, if rendered on the merits, is an absolute bar to a subsequent action [between the same parties or those in privity with them] on the same claim. A judgment is final not

only as to every matter which was offered to sustain the claim, but also as to *any other admissible matter which might have been offered for that purpose. . . .* The rule of claim preclusion prevents reassertion of the same claim regardless of what additional or different evidence or legal theories might be advanced in support of it. . . . In order for res judicata to apply, four elements must be met: (1) the judgment must have been rendered on the merits by a court of competent jurisdiction; (2) the parties to the prior and subsequent actions must be the same or in privity; (3) there must have been an adequate opportunity to litigate the matter fully; and (4) the same underlying claim must be at issue." (Emphasis in original; internal quotation marks omitted.) *Girolametti* v. *Michael Horton Associates, Inc.*, 332 Conn. 67, 75, 208 A.3d 1223 (2019).

## 1

### Element One

With respect to the first element, a judgment rendered on the merits, it is well established "[t]hat a judgment rendered pursuant to a motion to strike is a judgment on the merits . . . ." *Santorso* v. *Bristol Hospital*, 127 Conn. App. 606, 617, 15 A.3d 1131 (2011), aff'd, 308 Conn. 338, 63 A.3d 940 (2013). In the first action, the court granted the motion to strike the complaint in its entirety. See *Couloute* v. *Board of Education*, supra, Superior Court, Docket No. CV-17-6074140-S. The plaintiffs do not argue that the motion to strike was not a judgment on the merits. The first element is satisfied because the ruling on the motion to strike was a judgment on the merits.

## 2

### Element Two

"The following principles govern the second element of res judicata, privity . . . . Privity is a difficult concept to define precisely. . . . There is no prevailing definition of privity to be followed automatically in every case. It is not a matter of form or rigid labels; rather it is a matter of substance. In determining whether privity exists, we employ an analysis that focuses on the functional relationships of the parties. Privity is not established by the mere fact that persons may be interested in the same question or in proving or disproving the same set of facts. Rather it is, in essence, a shorthand statement for the principle that [preclusion] should be applied only when there exists such an identification in interest of one person with another as to represent the same legal rights so as to justify preclusion. . . . While it is commonly recognized that privity is difficult to define, the concept exists to ensure that the interests of the party against whom collateral estoppel [or res judicata] is being asserted have been adequately represented . . . . A key consideration in determining the existence of privity is the

sharing of the same legal right by the parties allegedly in privity." (Citation omitted; internal quotation marks omitted.) *Girolametti* v. *Michael Horton Associates, Inc.*, supra, 332 Conn. 75–76.

"Consistent with these principles, this court and other courts have found a variety of factors to be relevant to the privity question. These factors include the functional relationships between the parties, how closely their interests are aligned, whether they share the same legal rights, equitable considerations, the parties' reasonable expectations, and whether the policies and rationales that underlie res judicata—achieving finality and repose, promoting judicial economy, and preventing inconsistent judgments—would be served. . . . [T]he crowning consideration, [however, is] that the interest of the party to be precluded must have been sufficiently represented in the prior action so that the application of [res judicata] is not inequitable." (Citations omitted; internal quotation marks omitted.) Id., 76–77.

The first action was against the Glastonbury Board of Education, Bookman, Bean, Witkin, and Daniels. In the current action, the defendants are all the same with the exception of Daniels, who has been replaced with another Glastonbury High School football coach, Alexander. The plaintiffs argued that Daniels and Alexander are not in privity because the facts alleged against Daniels are factually different from the facts alleged against Alexander. The defendants counter that Alexander was an agent of the same municipal board of education as was Daniels, and, therefore, Alexander was in privity for purposes of the first action. "It is well settled law that an action against a government official in his or her official capacity is not an action against the official, but, instead is one against the official's office and, thus, is treated as an action against the entity itself. . . . [In general] an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. . . . It is not a suit against the official personally, for the real party in interest is the entity. . . . Since [officials] represent not their own rights but the rights of the municipality the agents of the same municipal corporation are in privity with each other and with the municipality." (Internal quotation marks omitted.) *C & H Management, LLC* v. *Shelton*, 140 Conn. App. 608, 614, 59 A.3d 851 (2013). Similarly, Daniels and Alexander were in privity because both individuals were agents for Glastonbury High School on behalf of the town of Glastonbury. It is clear that all the defendants in the current case were all of the defendants in the first action with the exception of the aforementioned substitution of coaches. The second element of privity is satisfied.

3

Element Three

The third element requires an adequate opportunity to litigate the matter fully. The defendants argued that this third element is satisfied because, during the first case, the plaintiffs took all the steps and opportunities to fully litigate the matter. The plaintiffs counter that they did not have a fair opportunity to litigate the claims due to the unavailability of facts at the time of the prior action since Gabriel Couloute would not speak in any details as to the events that occurred during the football practice on October 20, 2016.

In *Tirozzi* v. *Shelby Ins. Co.*, 50 Conn. App. 680, 719 A.2d 62, cert. denied, 247 Conn. 945, 723 A.2d 323 (1998), the plaintiff brought the same claims against the same parties in two separate causes of actions. The first action was disposed of by a motion to strike. The Appellate Court concluded that the second action was barred by the doctrine of res judicata. The court reasoned that "[t]he motion to strike required the trial court to decide the merits of the plaintiff's claim. The parties had the opportunity to fully litigate the matter. The motion to strike was contested, and both parties participated in oral argument. . . . After the trial court granted the motion to strike, the plaintiff neither repleaded pursuant to Practice Book § 10-44 nor took an appeal. The plaintiff, therefore, had an adequate opportunity to litigate the matter in the first action and to seek appellate review." Id., 686–87.

In the first action, the plaintiffs brought a twenty-four count complaint against the defendants. The court granted the motion to strike the entire complaint, which included a negligence claim. The plaintiffs filed a motion in opposition and supporting memorandum of law. After the ruling, the plaintiffs filed a request for reconsideration on the motion to strike. The plaintiffs further filed an appeal. Similar to *Tirozzi*, in the present action, the defendants contend that the plaintiffs had the opportunity to fully litigate the matter because the plaintiffs prepared a memorandum of law in opposition to the motion to strike, attended oral argument on the motion, filed a motion for reconsideration, and had the opportunity to replead the causes of action. The defendants further point out that the plaintiffs subsequently filed an appeal in the first action, regardless of the fact that it was later withdrawn.

As for the recklessness claims, our Supreme Court has emphasized that it is a "well settled rule that [a] judgment is final not only as to every matter which was offered to sustain the claim, *but also as to any other admissible matter which might have been offered for that purpose* . . . . The rule of claim preclusion prevents reassertion of the same claim regardless of what additional or different evidence or legal theories might be advanced in support of it." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Powell* v. *Infinity Ins. Co.*, 282 Conn. 594, 607–608, 922 A.2d

1073 (2007). More recently, our Supreme Court, again, reiterated this proposition, stating that, "[u]nder claim preclusion analysis, a claim—that is, a cause of action—includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose. . . . Moreover, claim preclusion prevents the pursuit of any claims relating to the cause of action which were actually made or *might have been made*." (Emphasis in original; internal quotation marks omitted.) *Ventres* v. *Goodspeed Airport, LLC*, 301 Conn. 194, 205–206, 21 A.3d 709 (2011).

Accordingly, the plaintiffs had an adequate opportunity to fully litigate the claims in the first action and to seek appellate review. The recklessness claims are identical to the negligence claims, except for the language providing that the actions were done "consciously" or "knowingly." Although the plaintiffs did not make a claim for recklessness in the first action, it could have been asserted in the first action; thus, it is also extinguished under the doctrine of res judicata. As such, the third element is satisfied.

4

Element Four

"To determine whether claims are the same for res judicata purposes, this court has adopted the transactional test. . . . Under the transactional test, res judicata extinguishes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose. . . . What factual grouping constitutes a transaction, and what groupings constitute a series, are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage. . . . [E]ven though a single group of facts may give rise to rights for several different kinds of relief, it is still a single cause of action. . . . In applying the transactional test, we compare the complaint in the [present] action with the pleadings and the judgment in the earlier action." (Citations omitted; internal quotation marks omitted.) *Wheeler* v. *Beachcroft, LLC*, 320 Conn. 146, 159–60, 129 A.3d 677 (2016).

The defendants argued in support of their motion that these are the same claims. They argued that "[t]he central transactions to all of the claims in the first action was the purported inadequacy of and lack of establishing/following rules and procedures concerning head injuries, the failure to provide information concerning the dangers of concussions caused by repeated or severe head blows in the sport of high school football,

and the mishandling of young Gabriel Couloute's football related injuries by school administrators and the coaches." See Defendants' Memorandum of Law (#105) p. 17. The plaintiffs countered that "[t]he first action [was] predicated on repeated physical contact generally occurring at unspecified and undetermined times during the 2016–2017 football season, and cumulatively leading to injury. There was no specific factual event or events identified as to place, date or time as causing a specific injury." See Plaintiffs' Memorandum of Law (#106) p. 5. They contend that the second action is based on a very specific set of facts detailing the date, time, place, manner and precise injury causing event.

Applying the transactional test, the actions are clearly related in time. Specifically, the first action alleged negligence that occurred in the time frame of the 2016–2017 school year. In the present action, the plaintiffs alleged negligence and recklessness claims for injuries that occurred on October 20, 2016. Further, these head injuries in the current action have the same origin as in the first action, to wit, the participation in playing high school football. Additionally, the defendants argued that the plaintiffs have the same motivation, which is the recovery of damages from head trauma resulting in brain injuries in 2016, and the rectification of inadequate protocols and procedures related to concussions.

Although the plaintiffs argued that the current action alleged narrower claims that are factually different from the claims in the first action, due to new information provided by Gabriel Couloute, and facts regarding exacerbation of his injury and/or impediment to his recovery resulting from the failure and/or delay in implementing educational accommodations, these arguments, nevertheless, fail. "The rule of claim preclusion prevents reassertion of the same claim regardless of what additional or different evidence or legal theories might be advanced in support of it." (Internal quotation marks omitted.) *New England Estates, LLC* v. *Branford*, 294 Conn. 817, 842, 988 A.2d 229 (2010). Similarly, the Appellate Court has stated that "[t]he plaintiffs cannot reassert their claim by proffering additional or new evidence." *Honan* v. *Dimyan*, 63 Conn. App. 702, 709, 778 A.2d 989, cert. denied, 258 Conn. 942, 786 A.2d 430 (2001).

Viewing the complaint in the light most favorable to the plaintiffs and assuming that the plaintiffs truthfully did not have certain factual information surrounding a specific incident within that 2016–2017 football year time frame available to them, Connecticut law does not allow for the plaintiffs to circumvent the doctrine of res judicata by the reassertion of the same claims even after new information or evidence has been discovered.

B

Recognized Exceptions to Res Judicata

"In establishing exceptions to the general application of the preclusion doctrines, we have identified several factors to consider, including: (1) whether another public policy interest outweighs the interest of finality served by the preclusion doctrines . . . (2) whether the incentive to litigate a claim or issue differs as between the two forums . . . (3) whether the opportunity to litigate the claim or issue differs as between the two forums . . . and (4) whether the legislature has evinced an intent that the doctrine should not apply." (Citations omitted.) *Powell* v. *Infinity Ins. Co.*, supra, 282 Conn. 603. As discussed previously, the plaintiffs' motivation to litigate the claim was the same in the first action, the plaintiffs had an opportunity to litigate the claims in the prior action, and there has been no argument that the legislature has evinced an intent that the doctrine should not apply. Therefore, the only arguably applicable exception concerns whether another public policy interest outweighs the interest of finality.

"Because [the] doctrines [of res judicata and collateral estoppel] are judicially created rules of reason that are enforced on public policy grounds . . . whether to apply either doctrine in any particular case should be made based upon a consideration of the doctrine's underlying policies, namely, the interests of the defendant and of the courts in bringing litigation to a close . . . and the competing interest of the plaintiff in the vindication of a just claim. . . . These [underlying] purposes are generally identified as being (1) to promote judicial economy by minimizing repetitive litigation; (2) to prevent inconsistent judgments which undermine the integrity of the judicial system; and (3) to provide repose by preventing a person from being harassed by vexatious litigation. . . . Stability in judgments grants to parties and others the certainty in the management of their affairs which results when a controversy is finally laid to rest . . . . [T]he application of either doctrine has dramatic consequences for the party against whom it is applied, and . . . we should be careful that the effect of the doctrine does not work an injustice. . . . Thus, [t]he doctrines of preclusion . . . should be flexible and must give way when their mechanical application would frustrate other social policies based on values equally or more important than the convenience afforded by finality in legal controversies." (Citations omitted; internal quotation marks omitted.) Id., 601–602.

Balancing the public policy considerations of the interests of the defendants and the judicial system in bringing litigation to a close, and the plaintiffs in vindication of a just claim, the evidence of these repetitive claims provides support for bringing litigation to an end. Granting the motion for summary judgment in this case is in conformity with the exact purpose for which the doctrine of res judicata exists. This case does not

present itself as one that would frustrate social policies that are based on values equally or more important than that which is afforded by finality in legal controversies.

## CONCLUSION

For the reasons stated previously, there is no genuine issue as to any material fact. The defendants have demonstrated that they are entitled to judgment as a matter of law. The defendants' motion for summary judgment is granted on the ground of res judicata.[3]

* Affirmed. *Couloute* v. *Board of Education*, 203 Conn. App. 120, A.3d      (2021).

[1] Gabriel Couloute and April Couloute are identified collectively as the plaintiffs and individually by name where appropriate.

[2] In the first action, Scott Daniels, varsity football coach, was a defendant in the action instead of Mark Alexander.

[3] During argument at short calendar on July 8, 2019, on the record, the defendants stated their intention to go forward on the theory of res judicata and stated that the court could consider the previously raised issue of collateral estoppel waived. As such, the collateral estoppel issue has not been addressed in this memorandum.