******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

JOHN GIROLAMETTI, JR., ET AL. *v.* MICHAEL
HORTON ASSOCIATES, INC., ET AL.
(AC 38208)
(AC 38093)
(AC 38094)
(AC 38095)
(AC 38097)

JOHN GIROLAMETTI, JR., ET AL. *v.* VP
BUILDINGS, INC., ET AL.
(AC 38098)
(AC 38099)

Sheldon, Mullins and Bishop, Js.

*Argued December 8 and 9, 2016—officially released June 6, 2017*

(Appeal from Superior Court, judicial district of
Waterbury, Complex Litigation Docket, Agati, J.)

*Brian J. Donnell*, with whom, on the brief, was
*Michael G. Caldwell*, for the appellants in AC 38208
and the appellees in AC 38093, AC 38094, AC 38095, AC
38097, AC 38098, and AC 38099 (plaintiffs in both cases).

*Daniel J. Krisch*, with whom was *Frederick E. Hedberg*, for the appellee in AC 38208 (defendant in the first
case Rizzo Corporation).

*Deborah Etlinger*, with whom, on the brief, was *Matthew Horowitz*, for the appellant in AC 38093 (defendant in the first case Lindade Construction, Inc.).

*Anita C. Di Gioia*, for the appellant in AC 38094 (defendant in the first case Dominic Quaraglia Engineering, Inc.).

*Kevin M. Godbout*, for the appellant in AC 38095 (named defendant in the first case).

*Jared Cohane*, with whom, on the brief, was *Luke R. Conrad*, for the appellant in AC 38097 (defendant in the first case Test-Con, Inc.).

*Curtis L. Brown*, pro hac vice, with whom was *Davis S. Hardy*, for the appellant in AC 38098 (defendant in the second case Bluescope Buildings of North America, Inc., et al.).

*Sean R. Caruthers*, for the appellant in AC 38099 (defendant in the second case Pat Munger Construction Company, Inc.).

*Opinion*

BISHOP, J. These seven appeals arise from disputes regarding the construction of an expansion to a Party Depot Store (store) located in Danbury. The owners of the store, the plaintiffs John Girolametti, Jr., and Cindy Girolametti, brought actions against the general contractor, Rizzo Corporation (Rizzo), and seven subcontractors and sub-subcontractors who worked on the construction project, on various claims relating to the quality of the work provided. All eight defendants filed motions for summary judgment.[1] The owners of the store appeal from the court's judgment granting Rizzo's motion for summary judgment. The subcontractors and sub-subcontractors appeal from the court's judgment denying all of their motions for summary judgment.[2] Although each appeal involves some unique facts and implicates the interests of parties specific to that appeal, the factual backdrop to these appeals is sufficiently common to enable us, on review, to set forth the facts that underlie them in one background statement. Additional facts will be noted, as appropriate, in our discussion of each appeal.

I

FACTS AND PROCEDURAL HISTORY

In 2007, the plaintiffs, John Girolametti, Jr., and Cindy Girolametti, were the owners of property located at 43 South Street in Danbury. Later, on March 4, 2008, the Girolamettis transferred title to that property to 43 South Street, LLC, an entity of which they are the sole members. The Girolamettis are also the sole shareholders of Party Depot, Inc., an entity that leased the property from 43 South Street, LLC, on February 27, 2008. Although the Girolamettis and all of their foregoing entities are parties to these appeals, John Girolametti, Jr., has acted on behalf of all such parties in regard to the Party Depot project since its inception. Accordingly, for economy of language, we refer to the Girolamettis and their entities as Girolametti throughout our discussion of the appeals unless otherwise appropriate. Similarly, we refer to the Party Depot project simply as the project.

A

The Project

In June of 2007, Girolametti submitted a proposed building contract to the defendant Rizzo, a Connecticut corporation located in Danbury, under which Rizzo would serve as the general contractor for the construction of an expansion of the store. The project was to be designed by architect Russell J. Larrabee and structurally engineered by Richard Marnicki of Marnicki Associates, LLC. Between the date on which the contract was first proposed by Girolametti, June 22, 2007, and the date on which it was signed by Rizzo, November

12, 2007, several changes were made to the project. Most notably, the parties agreed to alter the project's original design by using a pre-engineered building (PEB), which was to be added to the existing structure. Due to this change, Girolametti and Marnicki could not come to terms as to Marnicki's services for the value engineering requirements of the anticipated PEB, and Marnicki left the project. As a result of his departure, Marnicki, whose design specifications for the project had previously been submitted to Danbury's municipal authorities, contacted the city with instructions not to use his structural drawings for permitting purposes.

The contract ultimately signed by Rizzo and Girolametti was on an American Institute of Architects "Standard Form of Agreement Between Owner and Contractor" and provided for a contract price of $2,435,100. The agreement included, inter alia, a provision requiring the submission of all disputes regarding the project between the owner and the contractor to binding arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association. The contract also had an article concerning subcontractors, which provided in relevant part: "By an appropriate agreement, written where legally required for validity, [Rizzo] shall require each subcontractor, to the extent of the work to be performed by the subcontractor, to be bound to [Rizzo] by the terms of the contract documents and to assume toward [Rizzo] all the obligations and responsibilities which [Rizzo], by these documents, assumes toward [Girolametti] and [Larrabee]. Said agreement shall preserve and protect the rights of [Girolametti] and [Larrabee] under the contract documents with respect to the work to be performed by the subcontractor so that the subcontracting thereof will not prejudice such rights, and shall allow to the subcontractor, unless specifically provided otherwise in the [Rizzo]-subcontractor agreement, the benefit of all rights, remedies and redress against [Rizzo] that [Rizzo], by these documents, has against [Girolametti]. Where appropriate, [Rizzo] shall require each subcontractor to enter into similar agreements with his sub-subcontractors. [Rizzo] shall make available to each proposed subcontractor, prior to the execution of the subcontract, copies of the contract documents to which the subcontractor will be bound by this paragraph 5.3, and identify to the subcontractor any terms and conditions of the proposed subcontract which may be at variance with the contract documents. Each subcontractor shall similarly make copies of such documents available to his sub-subcontractors."

As plans were evolving from an architect designed and individually engineered building to the purchase of a PEB for the project addition, Rizzo, in July of 2007, entered into a subcontract with the defendant Michael Horton Associates, Inc. (Horton), a Branford corpora-

tion engaged in the business of providing professional structural engineering services. Under this contract, Horton was to design the lower level parking garage structure and the supported floor slab at grade level with the understanding that the superstructure of the building above grade level would be designed by the PEB manufacturer. Horton also agreed to develop a snow drift load plan for the existing building roof structure, to include an analysis of the existing roof framing and a design for any needed framing reinforcement in this area. The contract amount for Horton's services was $23,000.

Consistent with the understanding between Girolametti and Rizzo that the project would involve a PEB, Rizzo entered into a $402,000 subcontract with the defendant Pat Munger Construction Company, Inc. (Munger), a Connecticut corporation located in Branford, for the purchase and erection of a pre-engineered steel building for the project. The subcontract provided, inter alia, that Munger would provide Rizzo and Larrabee with proposed shop drawings, as furnished by the building manufacturer for the purpose of completely describing the details of the PEB construction. In a portion of the agreement regarding Munger's potential liability, the parties agreed that Munger would be liable to Rizzo "for any direct costs [Rizzo] incurs as a result of [Munger's] failure to perform this subcontract in accordance with this Agreement. [Munger's] failure to perform includes the failure to perform of its subcontractors of any tier and any [suppliers]."

Pursuant to its subcontract with Rizzo, Munger, in turn, entered into a sub-subcontract with Varco Pruden Buildings, Inc. (VP), an Ohio corporation that later merged with the defendant BlueScope Buildings North America, Inc. (BlueScope), for the purchase of the PEB.[3] At the time, Munger was an authorized builder of VP manufactured buildings. In conjunction with this order, the defendant Steven Oakeson, an employee of BlueScope and a licensed professional engineer, signed and sealed the final erection drawings for the PEB ordered by Munger for the project.

Rizzo also subcontracted with the defendant Lindade Corporation (Lindade), located in Bridgeport, to perform construction services in connection with the project. Generally, Lindade's undertaking involved carpentry services in both the existing building and the anticipated addition. The contract price for Lindade's services was $245,988. Notably, Lindade's agreement with Rizzo contained the following provisions. Section 1 (b) of the agreement provides: "[Lindade] assumes toward [Rizzo] all obligations, risks, and responsibilities for the Work, which [Rizzo] assumes toward [Girolametti] in the Contract Documents, and shall be bound to [Rizzo] in the same manner and to the same extent [Rizzo] is bound to [Girolametti] by the Contract Docu-

ments." Section 2 (f) of the agreement provides: "[Lindade] acknowledges that [Girolametti's] payment to [Rizzo] for any work performed by [Lindade] is an express condition precedent to any . . . payment to [Lindade from Rizzo] and that [Rizzo] is under no obligation to make any partial or final payments to [Lindade] until and unless [Girolametti] first pays [Rizzo]. . . ." Section 4 (b) of the agreement provides: "[Lindade] shall be liable to [Rizzo] for any costs [Rizzo] incurs as a result of [Lindade's] failure to perform this subcontract in accordance with its terms. [Lindade's] failure to perform includes the failure to perform of its subcontractors of any tier and all [suppliers]. [Lindade's] liability includes, but is not limited to, (1) damages and other delay costs payable by [Rizzo] to [Girolametti] . . . ." Section 9 (a) of the agreement provides: "If, any action by [Girolametti] or involving the Contract Documents is reason for any dispute between [Rizzo] and [Lindade], [Lindade] agrees to be bound to [Rizzo] as [Rizzo] is bound to [Girolametti] by the terms of the Contract Documents and by any preliminary and final decisions or determinations made by the party, board or court the Contract Documents authorize, or by law, whether or not [Lindade] is a party to such proceedings. . . ."

Lindade, in turn, entered into a sub-subcontract with the defendant Domenic Quaraglia Engineering, Inc. (Quaraglia), a Massachusetts corporation, for structural engineering services in connection with the project. Specifically Quaraglia undertook to design and detail the infill stud wall and canopy roof along one wall of the building in accordance with architectural and structural drawings. The contract price for Quaraglia's services was $3825.

The last party to these appeals is the defendant Test-Con Inc. (Test-Con), a Connecticut corporation with its principal place of business in Danbury. Girolametti retained Test-Con while the project was underway to perform construction material inspection and testing services as periodically requested by Girolametti, for which Girolametti, in turn, was obligated to pay Test-Con an hourly fee based on the particular scope and focus of inspection and testing requested.

B

The Arbitration

Work on the project proceeded and was completed by November 3, 2008, the date on which the city of Danbury awarded a certificate of occupancy for the store. The parties, however, had disputes regarding their respective rights and obligations, for which Rizzo sought resolution through arbitration. Accordingly, on April 29, 2009, Rizzo applied for arbitration through the American Arbitration Association, claiming that Girolametti owed it further sums beyond the contract price for extra work performed and costs incurred on the

project. In response, Girolametti filed a counterclaim, seeking compensation of $406,431 for the cost of repairing Rizzo's alleged defects and completing the project and for certain credits claimed by Girolametti, and the additional sum of $354,572 for lost income caused by Rizzo's alleged failure to complete the project in a timely and proper manner.

Before the commencement of the arbitration, both parties filed memoranda of law. In its submission to the arbitrator, Girolametti alleged that Rizzo was responsible for multiple construction defects. Girolametti claimed that Rizzo had "failed to provide a pre-engineered structure that complied with the intent of the original design" and that "some of the most fundamental construction elements were completely eliminated." Additionally, while the arbitration was pending, Marnicki provided Girolametti with a report concerning his review of the construction, with particular regard to design issues concerning loading factors and the building's load carrying capacity.[4]

The arbitration hearings commenced in December, 2009, and were concluded on December 15, 2010, after thirty-five days of hearings. The record reflects that on December 8, 2010, the thirty-third day of the hearings, Girolametti made the decision to no longer participate in the hearings, despite the urging of the arbitrator that Girolametti proceed with the presentation of his damages claims.

On March 28, 2011, the arbitrator issued his award, in which he ordered Girolametti to pay Rizzo $508,597 for sums due, after accounting for credits due to Girolametti on the basis of evidence during arbitration, with interest to run at the rate of 5 percent per annum until the award was fully paid.[5] The arbitrator also ordered Rizzo to provide Girolametti with close out materials including warranties from the contractor and the subcontractors. With respect to claims made by Girolametti, the arbitrator stated: "[Girolametti] made a conscious and informed decision to no longer attend the scheduled [American Arbitration Association] hearings and intentionally refused to present any evidence or expert witnesses to explain or otherwise justify any alleged damages. The only conclusion that can be drawn from this decision is that either [Girolametti] did not incur any damages due to [Rizzo's] construction of the project, or [Girolametti] was unable to prove any of the damages [he] alleged in [his] prehearing brief."

Nonetheless, the arbitrator did discuss and assess Girolametti's claims as part of his written award. With respect to structural issues, the arbitrator rejected Girolametti's claim that the second floor of the building was not being occupied due to safety concerns. Rather, the arbitrator found that Girolametti was not permitted *by Danbury zoning regulations* to use the second floor for any purpose, and in fact that the city, after conduct-

ing an inspection, had found the structure to be safe with no reason to restrict or remove its certificate of occupancy. The arbitrator concluded: "[Girolametti] is not entitled to any damages or credits for structural issues."

## C

### The Underlying Cases

The dispute between Girolametti and Rizzo that began in arbitration ultimately metastasized into litigation involving Girolametti and Rizzo and several other entities that performed work on the project. On December 15, 2010, while the arbitration hearings were still in progress, Girolametti filed a declaratory judgment action in the Danbury Superior Court, seeking a determination that its contract with Rizzo was void, and therefore that it was not obliged to submit its dispute with Rizzo to arbitration. See *Girolametti* v. *Rizzo Corp.*, Superior Court, judicial district of Danbury, Docket No. CV-11-6005230-S (January 3, 2013). While the declaratory judgment action was pending, the arbitrator issued his award, on March 28, 2011. Thereafter, Rizzo applied, in the declaratory judgment action, to have the court confirm the award. Id. The court granted Rizzo's application and confirmed the arbitration award. Id. The court's judgment later was affirmed by this court. See *Girolametti* v. *Rizzo Corp.*, 152 Conn. App. 60, 97 A.3d 55 (2014).

Also, on May 18, 2011, more than thirty days after receiving notice of the arbitration award, and after the court had confirmed the award, Girolametti filed an application in the Danbury Superior Court to vacate that award on the basis of various alleged improprieties. See *Girolametti* v. *Rizzo Corp.*, 52 Conn. Supp. 592, 77 A.3d 217 (2012). Thereafter, Rizzo filed a motion to dismiss the application to vacate because of its untimeliness, which the court granted. Id., 601. On appeal, this court affirmed the court's judgment of dismissal. See *Girolametti* v. *Rizzo Corp.*, 144 Conn. App. 77, 70 A.3d 1162 (2013).

Two actions that have since been consolidated underlie the present appeals. By complaint filed March 22, 2011, after the arbitration hearings had concluded but before the issuance of the arbitration award, Girolametti brought an action in the Danbury Superior Court against Horton, alleging that Horton had been negligent in the performance of engineering services in connection with the project. Through an apportionment complaint, Horton brought into the litigation as apportionment defendants Rizzo, VP, Quaraglia, Lindade, and Test-Con.[6] Thereafter, Girolametti filed a fourth amended complaint, dated August 7, 2014, in which he made direct claims against Horton, Rizzo, Quaraglia, Lindade, and Test-Con. Second, on November 30, 2011, Girolametti brought an action in the Dan-

bury Superior Court against VP, BlueScope, Oakeson, Munger, and Rizzo. Thereafter, on July 16, 2014, Girolametti filed a third amended complaint in that matter, in which he removed direct claims against Rizzo, but maintained direct claims against VP, BlueScope, Oakeson, and Munger.

At the heart of many of Girolametti's claims in these underlying cases are the design and construction of the steel joists, engineered by a subcontractor of VP, Commercial Metals Company, to support the second floor of the building (defective joists claim). Each joist is comprised of two parallel steel bars that are connected by computer designed web reinforcements, which create a structural beam. Steel decking and a reinforced concrete slab sit on top of the structural beams. Girolametti alleged that the joists' design was defective, did not comply with the project's design requirements, and lacked the required loading capacity. Girolametti further alleged that many of the contractors, subcontractors, and sub-subcontractors were aware of these alleged defects and intentionally hid them from Girolametti.

In the actions underlying these appeals, each of the defendants moved for summary judgment against Girolametti on the grounds of res judicata, collateral estoppel and, in one instance, Girolametti's failure to timely move to vacate the award. In response, the court granted the motion filed by Rizzo but denied the motions for summary judgment filed by the other defendants on the ground that they lacked privity with Rizzo by virtue of not having been parties to the arbitration. These appeals followed.

## II

### APPLICABLE LEGAL PRINCIPLES

Having set forth the common facts and procedural history of these appeals, we now detail the legal principles that are germane, albeit with varying emphasis, to the claims presented on appeal.

### A

### Standard of Review

We address first our standard of review. "In seeking summary judgment, it is the movant who has the burden of showing the nonexistence of any issue of fact. The courts are in entire agreement that the moving party for summary judgment has the burden of showing the absence of any genuine issue as to all the material facts, which, under applicable principles of substantive law, entitle him to a judgment as a matter of law. The courts hold the movant to a strict standard. To satisfy his burden the movant must make a showing that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact. . . . As the burden of proof is on the movant, the

evidence must be viewed in the light most favorable to the opponent. . . . When documents submitted in support of a motion for summary judgment fail to establish that there is no genuine issue of material fact, the nonmoving party has no obligation to submit documents establishing the existence of such an issue. . . . Once the moving party has met its burden, however, the opposing party must present evidence that demonstrates the existence of some disputed factual issue. . . . [I]t is only [o]nce [the] defendant's burden in establishing his entitlement to summary judgment is met [that] the burden shifts to [the] plaintiff to show that a genuine issue of fact exists justifying a trial." (Citation omitted; internal quotation marks omitted.) *Romprey* v. *Safeco Ins. Co. of America*, 310 Conn. 304, 319–20, 77 A.3d 726 (2013). The scope of our review of the trial court's decision to grant or deny a defendant's motion for summary judgment is plenary. Id., 313.

The applicability of the doctrines of res judicata and collateral estoppel present questions of law over which we employ plenary review. *Lighthouse Landings, Inc.* v. *Connecticut Light & Power Co.*, 300 Conn. 325, 345, 347, 15 A.3d 601 (2011). Additionally, as one of the appeals raises the issue of the court's subject matter jurisdiction on the basis of Girolametti's failure to timely file a motion to vacate the arbitration award, we note that "because [a] determination regarding a trial court's subject matter jurisdiction is a question of law, our review is plenary." (Internal quotation marks omitted.) *Ungerland* v. *Morgan Stanley & Co.*, 132 Conn. App. 772, 775, 35 A.3d 299 (2012).

B

Finality of Judgments

Because all but one of the appeals concern the trial court's denial of motions for summary judgment, we first address legal principles pertaining to finality of judgments before proceeding to a discussion of the substantive issues on appeal. Although, as a general matter, this court only has jurisdiction to hear appeals from final judgments, there are particular circumstances in which we may hear an appeal from an otherwise interlocutory judgment. The trial court's denial of a motion for summary judgment raising a claim of res judicata or collateral estoppel presents such an instance. Because one purpose of the doctrines of res judicata and collateral estoppel is to avoid unnecessary and duplicative litigation, we treat the denial of a motion for summary judgment based on the doctrines of collateral estoppel or res judicata as a final judgment for appeal purposes. *Wheeler* v. *Beachcroft, LLC.*, 320 Conn. 146, 149 n.3, 129 A.3d 677 (2016); *Santorso* v. *Bristol Hospital*, 308 Conn. 338, 344, 63 A.3d 940 (2013); see *State* v. *Osuch*, 124 Conn. App. 572, 583, 5 A.3d 976 ("[a]pplication of [res judicata] . . . effectuates public policy by promoting judicial economy and avoiding

inconsistent judgments"), cert. denied, 299 Conn. 918, 10 A.3d 1052 (2010).

Finally, regarding the issue of finality of judgments, although normally the court's denial of a motion for summary judgment on grounds other than those that fully conclude the rights of the parties would not be considered a final judgment for appeal purposes, if summary judgment is sought primarily on the basis of res judicata or collateral estoppel but the movants move unsuccessfully for summary judgment on an alternative ground as well, the court may review the denial of such a claim along with the denial of the res judicata defense when the two are inextricably intertwined with one another. *Santorso* v. *Bristol Hospital*, supra, 308 Conn. 354 n.9. We turn now to a review of the legal principles germane to the substance of the issues on appeal.

## C

### Collateral Estoppel and Res Judicata

In each of the underlying cases, Girolametti sought damages against a business entity that performed services relating to the project. Also, in each case, the defendant moved for summary judgment on the primary basis of collateral estoppel and/or res judicata. We first note that "[a]n arbitration award is accorded the benefits of the doctrine of res judicata in much the same manner as the judgment of a court." (Internal quotation marks omitted.) *Fink* v. *Golenbock*, 238 Conn. 183, 196, 680 A.2d 1243 (1996). Accordingly, we now turn to a discussion of those interrelated doctrines.

"The doctrines of res judicata and collateral estoppel protect the finality of judicial determinations, conserve the time of the court, and prevent wasteful relitigation"; (internal quotation marks omitted) *Virgo* v. *Lyons*, 209 Conn. 497, 501, 551 A.2d 1243 (1988); and they "have been described as related ideas on a continuum." (Internal quotation marks omitted.) *Efthimiou* v. *Smith*, 268 Conn. 499, 506, 846 A.2d 222 (2004).

"[C]ollateral estoppel, or issue preclusion . . . prohibits the relitigation of an issue when that issue was actually litigated and necessarily determined in a prior action between the same parties or those in privity with them upon a different claim." Id. "An issue is *actually litigated* if it is properly raised in the pleadings or otherwise, submitted for determination, and in fact determined. . . . An issue is *necessarily determined* if, in the absence of a determination of the issue, the judgment could not have been validly rendered. . . . If an issue has been determined, but the judgment is not dependent upon the determination of the issue, the parties may relitigate the issue in a subsequent action. Findings on nonessential issues usually have the characteristics of dicta." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Dowling* v. *Finley Associates, Inc.*, 248 Conn. 364, 374, 727 A.2d

1245 (1999); see also *Efthimiou* v. *Smith*, supra, 268 Conn. 506–507. Furthermore, "[t]o invoke collateral estoppel the issues sought to be litigated in the new proceeding must be identical to those considered in the prior proceeding. . . . Both issue and claim preclusion express no more than the fundamental principle that once a matter has been fully and fairly litigated, and finally decided, it comes to rest." (Citations omitted; internal quotation marks omitted.) *Mazziotti* v. *Allstate Ins. Co.*, 240 Conn. 799, 812–13, 695 A.2d 1010 (1997).

If a party cannot succeed on a claim of collateral estoppel, though, it may be able to preclude claims on the basis of res judicata. "[T]he doctrine of res judicata, or claim preclusion, [provides that] a former judgment on a claim, if rendered on the merits, is an absolute bar to a subsequent action [between the same parties or those in privity with them] on the same claim. A judgment is final not only as to every matter which was offered to sustain the claim, but also as to *any other admissible matter which might have been offered for that purpose*. . . . The rule of claim preclusion prevents reassertion of the same claim regardless of what additional or different evidence or legal theories might be advanced in support of it." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Fink* v. *Golenbock*, supra, 238 Conn. 191. In order for res judicata to apply, "four elements must be met: (1) the judgment must have been rendered on the merits by a court of competent jurisdiction; (2) the parties to the prior and subsequent actions must be the same or in privity; (3) there must have been an adequate opportunity to litigate the matter fully; and (4) the same underlying claim must be at issue." *Wheeler* v. *Beachcroft, LLC*, supra, 320 Conn. 156–57.

"We have adopted a transactional test as a guide to determining whether an action involves the same claim as an earlier action so as to trigger operation of the doctrine of res judicata. [T]he claim [that is] extinguished [by the judgment in the first action] includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose. What factual grouping constitutes a transaction, and what groupings constitutes a series, are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage. . . . In applying the transactional test, we compare the complaint in the second action with the pleadings and the judgment in the earlier action." (Citations omitted; internal quotation marks omitted.) *Fink* v. *Golenbock*, supra, 238 Conn. 191–92. A reviewing court has the authority to determine whether the transactional test is satisfied by comparing

the factual underpinnings of the claims to determine if they are sufficiently similar. Id., 197; see also *Orselet* v. *DeMatteo*, 206 Conn. 542, 546, 539 A.2d 95 (1988).

Although related, the doctrines of res judicata and collateral estoppel are not identical. Our Supreme Court has explained the difference between these two related preclusion doctrines in this manner: "Although the doctrines of collateral estoppel and res judicata are conceptually related, in practice their application may yield distinct results. Unlike collateral estoppel, under which preclusion occurs only if a claim actually has been litigated, [u]nder the doctrine of res judicata, or claim preclusion, a former judgment on a claim, if rendered on the merits, is an absolute bar to a subsequent action on the same claim . . . [or any claim based on the same operative facts that] *might have been made. . . .* [T]he appropriate inquiry with respect to [claim] preclusion is whether the party had an *adequate opportunity to litigate the matter in the earlier proceeding . . . .*" (Emphasis in original; internal quotation marks omitted.) *Connecticut National Bank* v. *Rytman*, 241 Conn. 24, 43–44, 694 A.2d 1246 (1997).

Having set forth the general applicable law of collateral estoppel and res judicata, we next address the legal principles pertaining to the specific arguments raised on appeal regarding these two preclusion doctrines.

1

Fraud

In his appeal from the court's granting of Rizzo's motion for summary judgment, Girolametti argues, inter alia, that his claims could not be barred against Rizzo because Rizzo fraudulently procured the arbitration award. Additionally, Girolametti argues in each of the other six appeals that the court's denials of the defendants' motions for summary judgment were appropriate because the fraud committed by the defendants precluded their use of collateral estoppel and/or res judicata. Accordingly, we turn now to a discussion of fraud as it relates to those two preclusion doctrines.

Implicit in the determination that a prior judgment has been validly rendered is the notion that it was not procured by fraud or collusion, as new litigation will not be barred if the former judgment was procured through such means. See *Weiss* v. *Weiss*, 297 Conn. 446, 470, 998 A.2d 766 (2010) ("Res judicata does not apply to judgments obtained through fraud or collusion. . . . A party may not, however, circumvent the doctrine by merely *alleging* fraud." [Citation omitted; emphasis in original.]); *Powell* v. *Infinity Ins. Co.*, 282 Conn. 594, 600, 922 A.2d 1073 (2007) ("[t]he doctrine of res judicata holds that an existing final judgment rendered upon the merits *without fraud or collusion* . . . is conclusive of causes of action and of facts or issues thereby litigated as to the parties . . . in all other actions"

[emphasis added; internal quotation marks omitted]). Additionally, "unless a defendant had fraudulently concealed the relevant facts, the discovery of additional facts following . . . judgment does not block the application of res judicata . . . [when the] facts and events themselves arose prior to the filing of the original complaint [and] it was only [the plaintiff's] awareness of these facts that came later." (Internal quotation marks omitted.) *C & H Management, LLC* v. *Shelton*, 140 Conn. App. 608, 619, 59 A.3d 851 (2013).

A party that seeks to vacate an arbitration award must do so within the statutorily mandated thirty days, even if the party asserts fraud as a basis for the vacation. *Wu* v. *Chang*, 264 Conn. 307, 312–13, 823 A.2d 1197 (2003). "[General Statutes §] 52-420 (b) requires that a motion to vacate an arbitration award be filed within thirty days of the notice of the award to the moving party. If the motion is not filed within the thirty day time limit, the trial court does not have subject matter jurisdiction over the motion." (Internal quotation marks omitted.) Id., 312. "The statutory framework governing the arbitration process expressly covers claims of fraud. Specifically, General Statutes § 52-418 (a) requires the court to make an order vacating [an arbitration] award if it finds . . . [that] the award has been procured by corruption, *fraud*, or undue means . . . . Under § 52-420 (b), however, a party seeking an order to vacate an arbitration award on grounds of corruption, fraud or undue means—or on any other ground set forth in § 52-418—must do so within the thirty day limitation period set forth in § 52-420 (b). In other words, once the thirty day limitation period of § 52-420 (b) has passed, the award may not thereafter be attacked on any of the grounds specified in . . . § 52-418 . . . including fraud." (Citation omitted; emphasis in original; internal quotation marks omitted.) Id., 313.

### 2

### Privity

In six of these appeals, the court denied the defendant's motion for summary judgment on the ground that the moving party, the subcontractor or sub-subcontractor, lacked privity with Rizzo. For that reason, we briefly discuss the contours of the concept of privity. Our Supreme Court has opined: "Privity is a difficult concept to define precisely. . . . There is no prevailing definition of privity to be followed automatically in every case. It is not a matter of form or rigid labels; rather it is a matter of substance. In determining whether privity exists, we employ an analysis that focuses on the functional relationships of the parties. Privity is not established by the mere fact that persons may be interested in the same question or in proving or disproving the same set of facts. Rather it is, in essence, a shorthand statement for the principle that collateral estoppel should be applied only when there

exists such an identification in interest of one person with another as to represent the same legal rights so as to justify preclusion." (Citation omitted.) *Mazziotti* v. *Allstate Ins. Co.*, supra, 240 Conn. 813–14.

Our Supreme Court has further stated: "While it is commonly recognized that privity is difficult to define, the concept exists to ensure that the interests of the party against whom collateral estoppel [or res judicata] is being asserted have been adequately represented because of his purported privity with a party at the initial proceeding. . . . A key consideration in determining the existence of privity is the sharing of the same legal right by the parties allegedly in privity." (Internal quotation marks omitted.) *Ventres* v. *Goodspeed Airport, LLC*, 301 Conn. 194, 206–207, 21 A.3d 709 (2011).

### a

### Mutuality

In the six appeals brought by the subcontractors and sub-subcontractors, Girolametti argues that the court was correct in holding that collateral estoppel does not apply on privity grounds because each defendant was not a party to the arbitration and, therefore, lacked mutuality with Girolametti. Accordingly, we discuss the concept of mutuality, which is related to the notion of privity.

"Historically, the mutuality of parties rule meant that parties who were not actually adverse to one another in a prior proceeding could not assert collateral estoppel against one another in a subsequent action." *Aetna Casualty & Surety Co.* v. *Jones*, 220 Conn. 285, 300, 596 A.2d 414 (1991). That doctrine, however, is no longer followed in Connecticut. Our Supreme Court held in *Jones*, an appeal dealing with the issue of collateral estoppel: "We . . . join those jurisdictions that have concluded that the mutuality of parties rule is unsound. To allow a party who has fully and fairly litigated an issue at a prior trial to avoid the force of a ruling against him simply because he later finds himself faced by a different opponent is inappropriate and unnecessary. First, the mutuality of parties rule systematically diminishes the stability of judgments. . . . The rule allows a single party to present antithetic claims on identical issues in separate actions and to obtain favorable decisions in both solely because his opponent has changed. Additionally, increasingly important notions of judicial economy are served by the abandonment of the doctrine of mutuality. . . . In light of the scarcity of judicial time and resources, the repeated litigation of issues that have already been conclusively resolved by a court carries a considerable price tag in both money and time. Finally, we perceive no sound reason . . . to adhere to the doctrine of mutuality." (Citations omitted.) Id., 302. In short, the teaching in

more recent developments in the law of collateral estoppel, as it relates to the identity of parties or similarity of interests, is that so long as the party to the original suit had a full and fair opportunity to litigate the issue and the issue was finally and necessarily decided by the court, or an arbitrator, the party against whom that issue was initially decided may not relitigate the same issue against a third party in a subsequent action. See id.

b

Defensive Collateral Estoppel

In all six of the appeals by the subcontractors and sub-subcontractors, the defendants argue that the court erred in denying their motions for summary judgment because each defendant was asserting collateral estoppel defensively, and, therefore, privity with Rizzo was not required. Accordingly, we turn now to a discussion of the defensive use of collateral estoppel.

Indeed, a party asserting the defense of collateral estoppel need not establish privity. As a panel of this court has previously noted: "Collateral estoppel may be invoked against a party to a prior adverse proceeding or against those in privity with that party." (Internal quotation marks omitted.) *Young* v. *Metropolitan Property & Casualty Ins. Co.*, 60 Conn. App. 107, 114, 758 A.2d 452, cert. denied, 255 Conn. 906, 762 A.2d 912 (2000). "[Collateral estoppel] may be invoked offensively, in support of a party's affirmative claim against his opponent, or defensively, in opposition to his opponent's affirmative claim against him. . . . [Defensive collateral estoppel] occurs when a defendant in a second action seeks to prevent a plaintiff from relitigating an issue that the plaintiff had previously litigated in another action against the same defendant or a different party. . . . It is well established that privity is not required in the context of the defensive use of collateral estoppel . . . ." (Citation omitted; internal quotation marks omitted.) *Marques* v. *Allstate Ins. Co.*, 140 Conn. App. 335, 340–41, 58 A.3d 393 (2013).

II

APPEALS

Having reviewed the factual and procedural history of these appeals and the legal principles that govern them, we turn now to our consideration of each appeal.

A

AC 38208 Rizzo

In AC 38208, Girolametti appeals from the decision granting Rizzo's motion for summary judgment in which Rizzo alleged that Girolametti's claims against it regarding the defective joists on the second floor of the building were barred by collateral estoppel and/or res judicata. The court granted Rizzo's motion on the basis of res judicata. Girolametti claims on appeal that the

court erred in granting Rizzo's motion for summary judgment. Specifically, Girolametti argues that res judicata does not apply to his defective joists claim for two reasons: (1) it does not relate to the contract claims brought in the arbitration and, therefore, was not fully and fairly litigated; and (2) Rizzo's fraudulent concealment of the defective joists bars the application of res judicata. Additionally, Girolametti claims that the court erred in interpreting his fraudulent concealment claim as an untimely attempt to vacate the arbitration award. He further claims that the court erred in not finding that, as a result of Rizzo's fraudulent concealment of the defect, his defective joists claim did not accrue until March, 2013, pursuant to General Statutes § 52-595. Lastly, Girolametti claims that Rizzo waived its right to arbitrate the defective joists claim because Rizzo did not submit the issue to the arbitrator and it did not notify Girolametti of the defects. Rizzo argues that the court properly held that Girolametti's claims against it were barred by the doctrine of res judicata because the claims Girolametti now asserts either were raised, or could have been raised, in the arbitration.[7] We agree with Rizzo.

In the case underlying this appeal, Girolametti brought an eleven count amended complaint, dated August 7, 2014, against Horton, Rizzo, Quaraglia, Lindade, and Test-Con. The counts brought directly against Rizzo claimed the following: (1) that Rizzo was guilty of an intentional breach of duty and fraudulently concealed a cause of action; (2) that Rizzo tortiously interfered with Girolametti's business expectations; and (3) that Rizzo had committed a violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq. At the heart of Girolametti's claims was his assertion that the steel joists designed, fabricated, and installed to support the building's second floor were defectively designed and did not conform to design specifications. Additionally, Girolametti alleged that although Rizzo had learned by November, 2010, of this defect, and that it required remediation, Rizzo had fraudulently kept this information from Girolametti.

In response, Rizzo filed a motion for summary judgment in which it asserted that all of Girolametti's claims against it were barred as a matter of law by the doctrines of collateral estoppel and/or res judicata because the issues and claims made by Girolametti in the litigation previously had been resolved in binding arbitration. In response, Girolametti alleged that his specific claim of the defective joists design had not been litigated in the arbitration. Girolametti asserted, as well, that his claim that Rizzo had obtained the arbitration award by fraudulent conduct raised genuine issues of material fact which, if proven favorably to the plaintiff, would make inapplicable the preclusion doctrines of res judicata and collateral estoppel. Both parties submitted documentation to the court in connection with the motion

for summary judgment, and the matter was thoroughly briefed by each party.

By memorandum of decision dated May 5, 2015, the court, *Agati*, *J.*, granted Rizzo's motion for summary judgment on the grounds that the claims made by Girolametti in the litigation were barred by the doctrine of res judicata and that Girolametti's fraud claim was controlled by the time limiting factors set forth in the statutory scheme related to the vacation of arbitration awards. In its assessment of Rizzo's claim of res judicata, the court applied the transactional test to assess the availability of a res judicata defense to the claims now being made in litigation, and, in doing so, the court concluded that the claims presently made by Girolametti in litigation involved the same claims that either were advanced or could have been advanced by Girolametti in arbitration. Additionally, as to Girolametti's claim that res judicata should not bar the present action because the arbitration award had been procured by fraud, the court pointed to the conclusion of our Supreme Court in *Wu* v. *Chang*, supra, 264 Conn. 307, as discussed in *Bloomfield* v. *United Electrical, Radio & Machine Workers of America, Connecticut Independent Police Union, Local 14*, 285 Conn. 278, 989 A.2d 561 (2008), that claims of fraud do not toll the running of the statutory time period for filing an application to vacate an arbitration award. This appeal followed.

Our review of the arbitration award supports the court's conclusion that Girolametti had a full and fair opportunity to present his claims against Rizzo concerning the building project. We agree, as well, with the court's thorough analysis of the doctrine of res judicata and its applicability to the facts at hand by use of the transactional test. Finally, we agree with the court's assessment that the application of the statutory scheme regarding the vacation of arbitration awards to claims of fraud was a correct application of the law. Accordingly, we conclude that the court did not err in granting Rizzo's motion for summary judgment.

### B

#### AC 38095 Horton

In AC 38095, the defendant Horton appeals from the denial of its motion for summary judgment in which it alleged that Girolametti's claims against it were all barred by collateral estoppel and/or res judicata. The court denied Horton's motion on the basis that Horton was not in privity with Rizzo and, therefore, could not avail itself of the arbitration decision, to which it was not a party. On appeal, Horton argues that the court erred in denying its motion for summary judgment because Girolametti's claims against it are barred by the doctrines of res judicata and/or collateral estoppel. We agree with Horton that the court erred in not concluding that the claims against it by Girolametti were

barred by res judicata.

In the case underlying this appeal, Girolametti asserted three claims against Horton, a subcontractor to Rizzo on the project. In his eleven count, fourth amended complaint dated August 7, 2014, Girolametti alleged that Horton: (1) was negligent in the performance of design and engineering services for the project; (2) made negligent misrepresentations regarding the engineering and construction of the project on documentation submitted to the city of Danbury and project participants and during the arbitration process; and (3) intentionally made these misrepresentations to the same parties and in the same contexts.

In response, Horton filed its answer and interposed several special defenses, including, inter alia, that Girolametti's claims should be barred by the doctrines of collateral estoppel and/or res judicata and that Girolametti's claims were time barred. Horton filed a motion for summary judgment based upon each of these arguments. In response, Girolametti filed an objection to Horton's motion.

After the issues were briefed and argued, the court, *Agati*, *J.*, by notice dated May 13, 2015, denied Horton's motion. The court, in its memorandum of decision, states in part: "[Horton] argues that it should prevail on the theory of collateral estoppel because the arbitration decision that adjudicated the issues between [Girolametti] and . . . Rizzo precludes [Girolametti] from litigating against [Horton] because [it] was in privity with Rizzo." Following its discussion of the facts, the court concluded: "The court concludes that [Horton] is not in privity with Rizzo, and therefore, issues of fact exist rendering the granting of summary judgment inappropriate." After receiving this decision, Horton filed a motion to reargue, claiming, inter alia, that the court had failed to address its claim of res judicata. In this motion, Horton argued that it was entitled to summary judgment on this alternative ground. The court denied Horton's motion to reargue on June 16, 2015, and this appeal followed.

On appeal, Horton claims that the court incorrectly held that it needed to be in privity with Rizzo for it to benefit from the preclusive effect of the doctrine of collateral estoppel and that the court failed to reach its alternative claim that the plaintiff should be barred from this litigation by application of the doctrine of res judicata. We agree with Horton.

At the outset, and as noted in our general legal discussion, set forth previously, privity is not a requirement for the defensive use of collateral estoppel. *Marques* v. *Allstate Ins. Co.*, supra, 140 Conn. App. 340–41. That is, if an issue already has been decided adversely to a current litigation party in previous litigation, that party is barred from reasserting that issue against any other

party, regardless of whether the other party is in privity with a party to the prior litigation. Id. The rationale for this rule is that once an issue has been fully and fairly litigated by a party, if the resolution of that issue was necessary to the ruling against him in the prior litigation, notions of fairness and judicial economy serve to prevent the party from once again attempting to litigate that issue. Id., 339–40.

In the case at hand, however, we agree with the trial court that summary judgment on the basis of collateral estoppel was not warranted, not for reasons related to a lack of privity, but because the record does not disclose that the design and construction defect issue raised by Girolametti in this action was fully and fairly litigated in the arbitration, much less that its resolution adverse to Girolametti was necessary to the arbitration award. From our review of the record, it is clear that the arbitrator found for Rizzo, in part, because Girolametti defaulted in his proof. As previously noted, in making his award, the arbitrator noted: "[Girolametti] made a conscious and informed decision to no longer attend the scheduled [American Arbitration Association] hearings and intentionally refused to present any evidence or expert witnesses to explain or otherwise justify any alleged damages. The only conclusion that can be drawn from this decision is that either [Girolametti] did not incur any damages due to [Rizzo's] construction of the project, or [Girolametti] was unable to prove any of the damages [he] alleged in [his] prehearing brief." From this recitation, we cannot conclude that the issue asserted by Girolametti in this litigation as to the design and construction of the PEB was specifically decided by the arbitrator at all, much less that its determination was necessary to the ultimate award.

We conclude, however, that the court incorrectly denied Horton's motion for reconsideration, in which Horton requested that summary judgment be granted on the ground of res judicata. As noted previously, a proper application of the doctrine of res judicata requires that the claim made in the present action be the same as one the claimant made in a prior action or one that the claimant had an adequate opportunity to make in the prior action. *Wheeler* v. *Beachcroft, LLC*, supra, 320 Conn. 156–57. The record provides ample uncontestable evidence that Girolametti claimed, in the arbitration, that the PEB had not been designed and engineered properly by Rizzo with regard to the loading capacity of the second floor. The record equally is clear that Girolametti was informed by Marnicki during the arbitration process that further examination and testing would be required to assess the adequacy of the design engineering and construction for the building's anticipated use.[8] Girolametti, however, chose not to adduce evidence in support of this claim.

Contrary to the trial court's conclusion, we find priv-

ity in the relationship between Horton and Rizzo. As noted, Rizzo subcontracted with Horton to provide structural engineering services in conjunction with the PEB. To whatever extent Horton may have failed to meet its obligation to Rizzo resulting in any design or engineering defects in the project, these claims implicated Rizzo's overarching obligations to Girolametti under the contract. Rizzo and Horton shared the same legal rights, binding them in privity for purposes of the project. *Ventres* v. *Goodspeed Airport, LLC*, supra, 310 Conn. 207. In short, Girolametti's present claims against Horton are simply a restatement of claims Girolametti either did make or had the full and fair opportunity to make against Rizzo in the arbitration. Applying the transactional test, we conclude that the subject of Girolametti's claim against Horton in the present litigation relates directly to the subject of the arbitration, and thus, that the claim asserted herein is the same as one that Girolametti either did assert or could have asserted in the arbitration. On that basis, summary judgment should have been granted on the ground of res judicata.

## C

### AC 38093 Lindade

In AC 38093, the defendant Lindade appeals from the denial of its motion for summary judgment, in which it alleged that Girolametti's claims against it were all barred by collateral estoppel and/or res judicata. The court denied Lindade's motion on the basis that Lindade was not in privity with Rizzo and, therefore, could not avail itself of the arbitration decision, to which it was not a party. On appeal, Lindade argues that the court erred in denying its motion for summary judgment because Girolametti's claims against it are barred by the doctrines of res judicata and collateral estoppel. We agree with Lindade that the court erred in not concluding that the claims against it by Girolametti were barred by res judicata.

In the case underlying this appeal, Girolametti asserted a negligence claim against Lindade, a subcontractor to Rizzo on the project, in the eleven count, fourth amended complaint dated August 7, 2014. Girolametti claimed, in essence, that Lindade negligently failed to ensure that construction standards and state laws were followed concerning the project by its crew and its sub-subcontractor, Quaraglia. Girolametti alleged, as well, that Lindade performed work without proper design or municipal approvals, failed to construct portions of the building in conformity with the design and construction requirements of the Connecticut Building Code and industry standards, negligently constructed certain portions of the project, and failed to deliver its warranty to the plaintiff, and failed to inform Girolametti of the project's many deficiencies in design and construction of which it had knowledge. Girolametti claimed that, as a result of Lindade's alleged

negligence, it had suffered damages because portions of the building had been designed and built in a deficient manner and remained unremedied when remediation could have been accomplished by entities other than the plaintiff.

In response, following its answer and assertion of special defenses, on November 3, 2014, Lindade moved for summary judgment on the basis of res judicata and/ or collateral estoppel.[9] Following briefing and oral argument, the court, *Agati*, *J.*, denied Lindade's motion by order dated May 13, 2015. In its order the court stated: "The court concludes that [Lindade] is not in a privity position so as to avail itself of the arbitration decision adjudicating the issues between [Girolametti] and Rizzo, and therefore, issues of fact exist rendering the granting of summary judgment inappropriate." Thereafter, Lindade filed a motion to reargue in which it argued that privity is not required for the defensive use of collateral estoppel and that the court had misapplied the law of privity as it relates to the doctrine of res judicata. By judicial notice, the court denied the defendant's motion to reargue. This appeal followed.

Although we agree with Lindade's assertion that in accordance with our decisional law a party asserting collateral estoppel as a defense need not demonstrate privity, we conclude that collateral estoppel is not available to Lindade in these particular circumstances. Here, we cannot conclude from the record that a substantive decision on the merits of the issues raised by Girolametti's design and construction claims was necessary to the arbitration award in favor of Rizzo because of the arbitrator's conclusion that Girolametti, in essence, had defaulted in proving his claims by abandoning the arbitration.

We conclude, however, that the court incorrectly denied Lindade's motion for summary judgment on the basis of res judicata because Girolametti had a full and fair opportunity to assert, in the arbitration against Rizzo, all of the claims it now makes against Lindade. Contrary to the court's conclusion, we conclude that Lindade was in privity with Rizzo with regard to the claims later asserted against Lindade, and we conclude that those claims meet the transactional test as well. In essence, every claim presently asserted by Girolametti against Lindade could have been made against Rizzo in the arbitration because Lindade, as a subcontractor to Rizzo, undertook to perform certain services for the project that were the overarching responsibility of Rizzo pursuant to Rizzo's contract with Girolametti.

The record reveals that on December 26, 2007, Rizzo and Lindade entered into a contract that made reference to the contract between Rizzo and Girolametti and contained the following pertinent provisions: "[A]ll documents comprising the prime contract are on file in [Rizzo's] office, and [Lindade] represents it has had the

sufficient opportunity to read and examine the prime contract and that it has read and examined it and fully and completely understands it." It further provides: "[Rizzo] desires to subcontract certain work specified in the contract documents and described herein, and [Lindade] desires to perform this work at the prices and upon the terms and conditions set forth herein." The subcontract between Rizzo and Lindade also provides: "[Lindade] assumes toward [Rizzo] all obligations, risks, and responsibilities for the work, which [Rizzo] assumes toward [Girolametti] in the contract documents, and should be bound to [Rizzo] in the same manner and to the same extent [that Rizzo] is bound to [Girolametti] by the contract documents." Finally, the agreement provides that Lindade would be responsible to pay Rizzo any sums that Rizzo became obligated to pay Girolametti for any damages incurred due to Lindade's failure to fulfill its obligations adequately under the subcontract.

On the basis of this record, it is clear that Lindade is in privity with Rizzo with respect to the claims presently made by Girolametti against Lindade. To afford Girolametti this opportunity to assert claims directly against Lindade that he had the full and fair opportunity to litigate in arbitration against Rizzo would defeat the core purpose of res judicata regarding the finality of judgments and the degree of closure necessary to an efficient and just dispute resolution system. All the requirements for the application of the doctrine of res judicata are met, and, therefore, summary judgment should have been granted on that basis.

D

AC 38094 Quaraglia

In AC 38094, the defendant Quaraglia appeals from the denial of its motion for summary judgment, in which it alleged that Girolametti's claims against it were all barred by collateral estoppel and/or res judicata. The court denied Quaraglia's motion on the basis that Quaraglia was not in privity with Rizzo and, therefore, could not avail itself of the arbitration decision, to which it was not a party. On appeal, Quaraglia argues that the court erred in denying its motion for summary judgment because Girolametti's claims against it are barred by the doctrines of res judicata and/or collateral estoppel. We agree with Quaraglia that the court erred in not concluding that the claims against it by Girolametti were barred by res judicata.

In the case underlying this appeal, Girolametti asserted a negligence claim against Quaraglia, a subcontractor to Lindade and sub-subcontractor to Rizzo on the project, in the eleven count, fourth amended complaint dated August 7, 2014. In essence, Girolametti alleged that Quaraglia had performed engineering services for the project in which it knew or should have

known that Girolametti would rely on it to act properly and professionally and in compliance with applicable law, codes, and Girolametti's programmatic requirements. Girolametti alleged that Quaraglia negligently failed to meet its responsibilities by: not coordinating its work and communicating with others; not filing required documentation with Girolametti, his agents, or the city; not adequately performing site observations or assuring that engineering standards and applicable legal requirements were being met; preparing inadequate designs for the cold-formed steel stud framing dormers and canopy; and failing to certify that aspects of the project were not code compliant. Included in Girolametti's allegations was his assertion that Quaraglia owed it a duty to act reasonably, independent of any contractual undertakings with Lindade, Rizzo or other defendants. Girolametti alleged that as a consequence of Quaraglia's negligence, it had suffered damages because portions of the project were designed and constructed in a deficient manner and not remediated when they could have been by parties other than Girolametti.

In response to this complaint, Quaraglia filed an answer and special defenses in which it alleged, inter alia, that Girolametti's claims were barred by the doctrines of collateral estoppel and/or res judicata. Thereafter, Quaraglia filed a motion for summary judgment in which it reasserted those claims. By order dated May 13, 2015, the court, *Agati*, *J.*, denied the motion. In its order, the court stated the following: "[Quaraglia] argues that it should prevail on the theory of collateral estoppel because the arbitration decision that adjudicated the issues between [Girolametti] and [Rizzo] precludes [Girolametti] from litigating against [Quaraglia] because [it] was in privity with Rizzo." Following its legal analysis, the court concluded: "The court concludes that [Quaraglia] is not in privity with Rizzo, and therefore, issues of fact exist rendering the granting of summary judgment inappropriate."

Thereafter, on June 1, 2015, Quaraglia filed a motion to reargue in which it alleged, inter alia, that the court had misapplied the law regarding collateral estoppel and that the court had failed, entirely, to address the res judicata basis for its motion for summary judgment. By order dated June 16, 2015, the court denied Quaraglia's motion to reargue. This appeal followed.

The record reflects that Lindade, a subcontractor to Rizzo, retained Quaraglia as a sub-subcontractor for the project. The agreement between Lindade and Quaraglia provided for Quaraglia to "design and detail the infill stud wall and canopy roof located along the [building's] south wall." The agreement further specified that Quaraglia would "perform analyses, design and prepare shop drawings of the light gauge metal studs for load bearing exterior curtain wall framing and canopy roof, for the above mentioned project, as indicated on the architec-

tural and structural drawings. The work [limit] is defined on the architectural drawings A-102 south wall (Front wall elevation only, along the coordinate line D), and related drawings." Finally, and relevant to our assessment of the issues on appeal, the agreement provided that "a structural engineer licensed in the state of Connecticut will sign and seal the computations and shop drawings" and that "computations and shop drawings will comply with . . . local building codes."

On the basis of this scope of work, Quaraglia claims that it was entitled to summary judgment because the issues raised against Quaraglia in this action already were decided adversely to Girolametti in the arbitration and that, even if the precise issues now asserted by Girolametti were not raised in the arbitration, Girolametti had a full and fair opportunity to litigate these issues in its arbitration with Rizzo, with whom Quaraglia claims to be in privity.

We assess first Quaraglia's collateral estoppel claim. The record reflects that in the prior litigation, Quaraglia's performance was, indeed, the subject of testimony and claims during the arbitration hearings. On August 23, 2010, Marnicki testified to his concerns regarding the structural integrity of the canopy roof and the front wall of the PEB system, which he indicated had been Quaraglia's responsibility. He further testified on August 25, 2010, that as part of his review of the project and his perception of its inadequacies he reviewed a drawing from Quaraglia which, Marnicki indicated, had provided signed and sealed structural drawings for the steel stud wall design of the PEB. Marnicki then expressed his concerns that Quaraglia had utilized the wrong drawings in arriving at its design calculations for the front wall of the building. In short, it is a fair reading of Marnicki's testimony that he criticized the work of Quaraglia on the basis that Quaraglia had utilized drawings that Marnicki had prepared for a different building design and not the PEB that Girolametti and Rizzo ultimately had agreed to build and, as a consequence, the construction of the building in the area of Quaraglia's responsibility was defective.

On the basis of this testimony and additional detail as reflected in the record of the arbitration hearings, it is apparent that the issues now asserted by Girolametti against Quaraglia specifically were addressed in arbitration. Additionally, as noted, for purposes of collateral estoppel, if the issues presently claimed by Girolametti in regard to Quaraglia's work on the project were raised and decided in the arbitration, and if such a decision was necessary to the arbitral award, it is not significant that Quaraglia was not party to the arbitration. As noted in our general discussion of the law, Connecticut has abandoned the mutuality rule, with the result that one who was not a party to prior litigation in which an issue was raised and necessarily decided may, nevertheless,

prevent relitigation of that issue. *Aetna Casualty & Surety Co.* v. *Jones*, supra, 220 Conn. 302. Additionally, as previously noted, one seeking to make defensive use of collateral estoppel need not establish privity in order to successfully preclude further litigation of an issue. *Marques* v. *Allstate Ins. Co.*, supra, 140 Conn. App. 341. The impediment to Quaraglia's assertion of collateral estoppel, however, lies in the language of the arbitration award from which we cannot conclude that resolution of the issues specifically related to Quaraglia's performance was necessary to the award in favor of Rizzo. Rather, as we have noted, the arbitrator found against Girolametti on the basis of Girolametti's default of the arbitration process. Accordingly, we agree with the trial court that Girolametti's claims against Quaraglia were not barred by collateral estoppel.

Summary judgment, nevertheless, is appropriate on the basis of res judicata if Girolametti had a full and fair opportunity in the arbitration to litigate the claims it presently makes against Quaraglia. *Wheeler* v. *Beachcroft, LLC*, supra, 320 Conn. 156–57. Contrary to the court's conclusion, the record in this instance supports Quaraglia's claim of privity. As noted, Girolametti and Rizzo had a master contract for the project which contemplated that Rizzo would be bound by its subcontractors' work. Lindade, in turn, as a subcontractor to Rizzo, was obligated to Rizzo for the reasonable fulfillment of its subcontractual duties in connection with the project. So, too, by operation of basic contract law, Quaraglia was liable to Rizzo for the faithful completion of its responsibilities to the project as outlined in the Quaraglia-Lindade engagement letter.

As our Supreme Court determined in *Mazziotti* v. *Allstate Ins. Co.* supra, 240 Conn. 799, and, as previously noted in this opinion, in order to assess whether privity exists, the court's task is to focus on the functional relationship between the parties and privity should be found where "there exists such an identification in interest of one person with another as to represent the same legal rights so as to justify preclusion." Id., 814. As the record reflects, in the arbitration between Girolametti and Rizzo, Girolametti adduced evidence of Quaraglia's alleged failures in meeting its responsibilities on the project as part of its effort to recover damages from Rizzo because, if Quaraglia had been found wanting in its performance, Girolametti would have been able to recover attendant damages directly from Rizzo under the terms of the master contract. In short, for purposes of the application of res judicata, Rizzo and Quaraglia were in privity.

Finally, in regard to Quaraglia's res judicata claim, it is plain from the record that Girolametti had an ample opportunity to present and did present evidence regarding Quaraglia's alleged failures of performance at the arbitration proceeding. And, to the extent Girolametti

did not present evidence of all of his claims against Quaraglia, the record of the arbitration demonstrates that Girolametti was prevented from doing so only by his decision to abandon the arbitration process. Girolametti should be prevented by res judicata from now asserting the same claims directly against Quaraglia that it did or could have asserted against Rizzo in the arbitration. All the requirements for the application of the doctrine of res judicata are met, and, therefore, summary judgment should have been granted on that basis.

E

AC 38097 Test-Con

In AC 38097, the defendant Test-Con appeals from the denial of its motion for summary judgment, in which it alleged that Girolametti's claims against it were all barred by collateral estoppel. The court denied Test-Con's motion on the basis that Test-Con was not in privity with Rizzo and, therefore, could not avail itself of the arbitration decision, to which it was not a party. On appeal, Test-Con argues that the court erred in denying its motion for summary judgment because Girolametti's claims against it are barred by the doctrine of collateral estoppel. Specifically, Test-Con argues that privity is not required for the defensive use of collateral estoppel. We agree with Test-Con that the court erred in denying its motion for summary judgment on the basis of Test-Con's lack of privity with Rizzo. We conclude that further proceedings are required.

In the case underlying this appeal, Girolametti directed three counts against Test-Con in his eleven count, fourth amended complaint dated August 7, 2014, alleging negligence, breach of contract, and negligent misrepresentation.[10] As noted in the factual background of this opinion, Girolametti directly hired Test-Con to perform construction material inspection and testing services related to the project while it was underway. Accordingly, Test-Con, unlike all the other defendant subcontractors and sub-subcontractors, was not in any chain of responsibility relating to Rizzo's obligations under its general contract with Girolametti. In short, its obligations regarding the project were solely to Girolametti.

In his negligence claim against Test-Con, Girolametti alleged, generally, that Test-Con negligently performed its task of testing, observing, and reporting with respect to the construction of the project. More specifically, Girolametti alleged that Test-Con failed to comply with applicable codes as well as Girolametti's programmatic requirements, and failed to report to Girolametti the various discrepancies in the construction and design of the building, particularly as it related to the second floor, and to steel fabrications, masonry, and the front wall of the foundation. Girolametti claimed, as well,

that Test-Con submitted an inaccurate and misleading final report concerning the adequacy of the project's construction and design characteristics.

In his breach of contract count against Test-Con, Girolametti essentially repeated his negligence allegations, adding that, as a result of Test-Con's breach of contract, Girolametti had suffered damages on the basis that the building was deficiently constructed and that, as a result of Test-Con's failure to test adequately and to report accurately, Girolametti was misled into not rejecting work that should have been remediated by others and into not making warrantees and other claims for deficient construction. In his negligent misrepresentation count against Test-Con, Girolametti alleged that Test-Con knowingly made false representations about the design and construction of the project to Girolametti, the city of Danbury, and other project participants. Girolametti further alleged that it relied on these representations and suffered monetary harm.

After filing responsive pleadings, Test-Con filed a motion for summary judgment on the basis of collateral estoppel. In sum, Test-Con alleged in its motion that Girolametti should be precluded from asserting against Test-Con in this action claims that had been made and decided in the arbitration between Girolametti and Rizzo.[11] By identical written orders dated May 13, 2015, the court denied Test-Con's motion for summary judgment, issuing one order for each of the two underlying cases in which Girolametti asserted claims against Test-Con. In its orders, the court stated: "The court concludes that [Test-Con] is not in a privity position so as to avail itself of the arbitration decision adjudicating the issues between [Girolametti] and Rizzo, and therefore, issues of fact exist rendering the granting of summary judgment inappropriate." On May 29, 2015, Test-Con filed a motion to reargue and reconsider in which it alleged, inter alia, that in its decision, the court had failed to recognize that proof of privity is not required for the defensive use of collateral estoppel. Subsequently, by order dated June 16, 2015, the court denied the defendant's motion to reargue and reconsider. This appeal followed.

At the outset, we note that Test-Con did not have a contractual relationship with Rizzo or with any of Rizzo's subcontractors or sub-subcontractors. Rather, Test-Con was retained directly by Girolametti for work on the project. For this reason alone, Test-Con could not assert the defense of res judicata because, in the arbitration with Rizzo, Girolametti only could make claims against Rizzo for which Rizzo could be held accountable either directly by its own contract or by reason of its responsibility for the performance of its subcontractors and sub-subcontractors. In short, the record reveals no basis on which Girolametti could have made any claim in the arbitration against Rizzo

for the alleged misfeasance or malfeasance of Test-Con. It is likely in recognition of this fact that Test-Con did not move for summary judgment on the basis of res judicata.

In regard to collateral estoppel, however, as Test-Con pointed out in the trial court and in its brief to this court, privity is not required for the defensive application of collateral estoppel if the outcome was necessary to the prior litigation, which, in this case, was the arbitration. The reasoning is apparent. Once an issue has been fully and fairly decided, the party against whom the issue was decided should not be permitted to relitigate the same issue against any party in subsequent litigation. Thus, to the extent that the trial court denied Test-Con's motion on the basis of a lack of privity, we disagree with the court's reasoning.

The record is not adequate for us to determine whether the specific claims Girolametti has asserted against Test-Con in the present action were decided, in their entirety, in the arbitration award. In coming to this conclusion, we are not persuaded by Test-Con's claim that since the arbitrator decided that the building met all applicable building codes and was given a certificate of occupancy, the arbitrator, by implication, determined that no construction design or engineering defects existed with respect to the project, as we believe this could be an overbroad interpretation of the award. We cannot conclude, on the basis of this record, that Test-Con is correct as a matter of law. As noted, the issues in arbitration were those between Girolametti and Rizzo and Rizzo's several subcontractors and sub-subcontractors. It is not clear to us that in making his award, the arbitrator necessarily determined the issues between Test-Con and Girolametti. We believe, therefore, that the parties should be given the opportunity to further develop a factual record, and to argue the issue of collateral estoppel before the trial court, without having to concern themselves with the issue of privity, which appears to be the basis on which the court denied the motion. Accordingly, we conclude that the trial court erred in denying Test-Con's motion for summary judgment on the basis of privity, and that further proceedings are warranted for the court to make a determination concerning collateral estoppel on its merits.

### F

### AC 38099 Munger

In AC 38099, defendant Munger appeals from the denial of its motion for summary judgment, in which it alleged, inter alia, that Girolametti's claims against it were all barred by collateral estoppel and/or res judicata. The court denied Munger's motion on the basis that Munger was not in privity with Rizzo and, therefore, could not avail itself of the arbitration decision, to

which it was not a party. On appeal, Munger argues, inter alia, that the court erred in denying its motion for summary judgment because Girolametti's claims against it are barred by the doctrines of res judicata and/or collateral estoppel.[12] We agree with Munger that the court erred in not concluding that the claims against it by Girolametti were barred by res judicata.

In the case underlying this appeal, Girolametti asserted, in his multicount July 16, 2014 third amended complaint, direct claims against Munger, including negligence and negligent misrepresentation. Girolametti also included Munger, along with VP, BlueScope, and Oakeson, in his direct claims of: (1) intentional breach of duty and fraudulent concealment of a cause of action; (2) tortious interference with business expectations; and (3) violation of CUTPA. In the negligence count, Girolametti asserted, inter alia, that Munger negligently failed to comply with local and state codes and regulations, as well as Girolametti's programmatic requirements. Specifically, he contended that Munger failed to: perform site observations properly; prepare and file construction drawings and documentation properly; ensure a proper design and construction for the second floor concrete slab; notify Girolametti that the second floor slab was deficient in its load carrying capacity; and notify Girolametti of the deficiencies of the second floor joists and decking. In his negligent misrepresentation claim against Munger, Girolametti essentially mirrored the allegations in the negligence count and added assertions that Munger negligently made representations that it knew to be false about the engineering and construction of the project to the city of Danbury and project participants. Girolametti asserted that it was harmed by these representations because the deficiencies of the project's design and construction were not remediated when they could have been.

Munger, on November 3, 2014, filed a supplemental motion for summary judgment and supporting memorandum of law[13] asserting that Girolametti's claims against it were all barred by the doctrines of collateral estoppel and/or res judicata as well as time-barred by the applicable statute of limitations. Additionally, Munger asserted that Girolametti's defense of fraudulent concealment was invalid. The court, *Agati, J.*, denied Munger's motion by written notice on May 13, 2015. As to Munger's collateral estoppel and res judicata arguments, the court stated: "The court concludes that [Munger] is not in privity with Rizzo, and, therefore, issues of fact exist rendering the granting of summary judgment inappropriate." Munger filed, on June 1, 2015, a motion for reconsideration and reargument in which it argued that privity is not required for the defensive use of collateral estoppel and that the court had misapplied the law of privity as it relates to the doctrine of res judicata. The court denied Munger's motion by judicial notice on June 16, 2015. This appeal followed.

In regard to Munger's collateral estoppel claim, although we agree that privity is not required for the defensive use of collateral estoppel, we cannot conclude that this doctrine bars Girolametti's claims against Munger. We come to that determination because the record makes it plain that with scheduled hearing dates remaining, Girolametti chose to cease participating in the arbitration process. In commenting on Girolametti's decision to abandon the process, the arbitrator concluded only, as we have noted, that either Girolametti "did not incur any damages due to [Rizzo's] construction of the project, or . . . was unable to prove any of the damages [Girolametti] alleged in [his] prehearing brief." The arbitrator further observed, with specific reference to any structural issues, that an inspection of the building by the city of Danbury revealed that the building complied with all requirements for a certificate of occupancy. Thus, the arbitrator concluded that Girolametti was not entitled to any damages or credits for structural issues. As a consequence of the arbitrator's observations concerning Girolametti's abandonment of the arbitration process, we are not able to conclude that the arbitrator's conclusions regarding the structural soundness of the building were necessary to the portion of his award in which no damages were awarded to Girolametti. In short, on the basis of on this record, the absence of any award to Girolametti for claimed damages could have resulted simply from Girolametti's default, without a decision on the merits. For this reason, we agree with the trial court that collateral estoppel does not preclude Girolametti's claims in this appeal.

Girolametti's claims are barred, however, by res judicata. Contrary to the trial court's conclusion, we find privity in the relationship between Munger and Rizzo. To the extent that Girolametti had been successful in proving any structural or engineering inadequacies of the PEB, which Munger supplied, Rizzo would have been liable to Girolametti under the terms of their contract. Thus, Rizzo and Munger shared the same legal rights, binding them in privity for purposes of the project. See *Ventres* v. *Goodspeed Airport, LLC*, supra, 310 Conn. 207. Additionally, the record demonstrates that Girolametti had a full and fair opportunity to litigate in the arbitration any claims regarding the inadequacy of the building's second floor loading capacity. Indeed, the record reflects that during the arbitration, Marnicki provided Girolametti with information regarding his concerns about the lack of design and inspection by VP, Munger's sub-subcontractor, of the second floor joists and slab. Applying the transactional test, we conclude that the subject of Girolametti's claim against Munger in the present litigation relates directly to the subject of the arbitration and, thus, the claim asserted herein is the same claim that Girolametti either did or could have asserted in the arbitration. Under those

circumstances, Girolametti's claim that he did not have a full and fair opportunity to litigate his claim regarding structural issues falls short. Here, all the requirements for the application of the doctrine of res judicata are met, and, therefore, summary judgment should have been granted on that basis.

G

### AC 38098 BlueScope and Oakeson

In AC 38098, defendants BlueScope and Oakeson appeal from the denial of their motion for summary judgment, in which they alleged that Girolametti's claims against them were all barred by collateral estoppel and/or res judicata. The court denied BlueScope and Oakeson's motion on the basis that they were not in privity with Rizzo and, therefore, could not avail themselves of the arbitration decision, to which they were not parties. On appeal, BlueScope and Oakeson argue that the court erred in denying their motion for summary judgment because Girolametti's claims against them are barred by the doctrines of res judicata and/or collateral estoppel. We agree with BlueScope and Oakeson that the court erred in not concluding that the claims against them by Girolametti were barred by res judicata.

In the case underlying this appeal, Girolametti asserted, in his multicount, July 16, 2014 third amended complaint, direct claims against VP, BlueScope, and Oakeson.[14] In one count, Girolametti asserted that VP, a sub-subcontractor to Rizzo on the project, had performed negligently in the preparation of construction drawings without due regard to Girolametti's design and engineering parameters, particularly after learning the building's specific joist loading requirements; failed to ensure proper building design, particularly as to the second floor concrete slab; failed to conduct necessary site observations; failed to file requisite documentation with relevant parties; and failed, in various ways, to conduct oversight and coordination of the project. In a separate count, Girolametti asserted that VP negligently made misrepresentations regarding the construction and engineering of the project building to the city of Danbury and project participants.

Girolametti also asserted direct negligence and negligent misrepresentation count against BlueScope, and in his count regarding negligent misrepresentation, Girolametti characterized BlueScope as a "successor, parent company, or an otherwise affiliated company with the defendant, VP." In the main, Girolametti's allegations against BlueScope mirrored the claims it asserted against VP. The same reasonably can be said with regard to Girolametti's direct allegations of negligence and negligent misrepresentation against Oakeson, except that claims against Oakeson alleged his failures in the performance of his duties as a registered and licensed

professional engineer with regard to the design and engineering of the building and his representations in that regard to interested parties. Girolametti also included VP, BlueScope, and Oakeson, along with Munger, in its direct claims of: (1) intentional breach of duty and fraudulent concealment of a cause of action; (2) tortious interference with business expectations; and (3) violation of CUTPA.

In response to Girolametti's claims, BlueScope and Oakeson, on September 29, 2014, filed a joint motion for summary judgment, asserting, inter alia, that the plaintiff's claims were barred by the doctrines of res judicata and/or collateral estoppel. In support of their preclusion defenses, these defendants attached documentary evidence that Marnicki had opined, during the arbitration, that he had many concerns with the building, including that the second floor could not support certain point loads and that the PEB design did not conform to the parameters prescribed by Horton. BlueScope and Oakeson argued, in their memorandum of law in support of their motion, that since the arbitrator had determined that Rizzo had met the building code requirements of the city of Danbury, the issue of the building's second floor loading capacity actually had been determined in arbitration. In response, Girolametti argued, inter alia, that the "issue of the negligent design, fabrication, and certification of the defective second floor joists" was not raised during the arbitration. By order dated May 13, 2015, the court, *Agati*, *J.*, denied the motion for summary judgment filed by BlueScope and Oakeson. The court stated: "The court concludes that the[se] defendants are not in privity with Rizzo, and therefore, issues of fact exist rendering the granting of summary judgment inappropriate." This appeal followed.

Our analysis of the defendants' claims of res judicata and collateral estoppel parallels our analysis regarding Horton's appeal, set forth in AC 38095. Although we agree with the defendants that the issue of the loading capacity of the second floor of the building was litigated in arbitration and that, in that litigation, Girolametti presented evidence related to the joists undergirding the second floor, and that the arbitrator opined that Girolametti had failed to prove that the building suffered from engineering or design defects, for purposes of collateral estoppel, we are not able to confirm that the arbitrator's conclusion regarding the building's design and engineering integrity was necessary to his award. We come to that determination because of the unique circumstances of this arbitration. Here, the record makes it plain that with scheduled hearing dates remaining, Girolametti chose to cease participating in the process. In commenting on Girolametti's decision to abandon the arbitration process, the arbitrator concluded, only, that either Girolametti "did not incur any damages due to [Rizzo's] construction of the project,

or . . . was unable to prove any of the damages [Girolametti] alleged in [his] prehearing brief." The arbitrator further observed, without specific reference to any structural issues, that an inspection of the building by the city of Danbury revealed that the building complied with all requirements for a certificate of occupancy. Thus, the arbitrator concluded that Girolametti was not entitled to any damages or credits for structural issues.

As a consequence of the arbitrator's observations concerning Girolametti's abandonment of the arbitration process, we are not able to conclude that the arbitrator's conclusions regarding the structural soundness of the building were necessary to the portion of his award in which no damages were awarded to Girolametti. In short, on the basis of this record, that outcome could have resulted simply from Girolametti's default without a decision on the merits. For this reason, we agree that collateral estoppel does not preclude Girolametti's claims in this appeal.

On the other hand, Girolametti's claims are barred by res judicata. Contrary to the trial court's conclusion, we find privity in the relationship among BlueScope and Oakeson and Munger and, in turn, between Munger and Rizzo. Indeed, during the arbitration, substantial evidence was adduced by Girolametti against Rizzo of the claimed inadequacy of the PEB purchased for the project by Munger from BlueScope. To the extent that Girolametti had been successful in proving any structural or engineering inadequacies of the PEB, and notwithstanding any attendant failure of performance by Munger or BlueScope, Rizzo would have been liable to Girolametti on the basis of the terms of their contract. Thus, Rizzo, Munger, and BlueScope shared a community of interest in the enterprise, which is a hallmark of any privity analysis. *Ventres* v. *Goodspeed Airport, LLC*, supra, 301 Conn. 207 ("[a] key consideration in determining the existence of privity is the sharing of the same legal right by the parties allegedly in privity" [internal quotation marks omitted]).

Finally, the record demonstrates that Girolametti had a full and fair opportunity to litigate any claims regarding the inadequacy of the building's second floor loading capacity. The record discloses even that the city of Danbury suggested to him that he retain an engineer to closely examine the project. Although Girolametti did not hire the engineer as suggested, the city of Danbury did in order to provide an independent review of the project. Shortly thereafter, as the arbitration was proceeding, Marnicki, the city's engineer, and the city's building official toured the project to review items on a report put together by Marnicki. Under those circumstances, Girolametti's claim that he did not have a full and fair opportunity to litigate his claim regarding structural issues falls short. Here, all the requirements for the application of the doctrine of res judicata are met,

and, therefore, summary judgment should have been granted on that basis.

## III

## SUMMARY

In AC 38208, the judgment in favor of Rizzo is affirmed.

In AC 38095, the judgment is reversed and the case is remanded with direction to render summary judgment in favor of Horton on the basis of res judicata.

In AC 38093, the judgment is reversed and the case is remanded with direction to render summary judgment in favor of Lindade on the basis of res judicata.

In AC 38094, the judgment is reversed and the case is remanded with direction to render summary judgment in favor of Quaraglia on the basis of res judicata.

In AC 38097, the judgment is reversed and the case is remanded to the trial court for a hearing on Test-Con's motion for summary judgment for that court to determine whether the claims advanced by Girolametti against Test-Con were, in fact, resolved in the arbitration proceeding, and, if so, whether their resolution was necessary to the arbitration award.

In AC 38099, the judgment is reversed and the case is remanded with direction to render summary judgment in favor of Munger on the basis of res judicata.

In AC 38098, the judgment is reversed and the case is remanded with direction to render summary judgment in favor of BlueScope and Oakeson on the basis of res judicata.

In this opinion the other judges concurred.

[1] In AC 38098, there are two defendants that filed a combined motion for summary judgment: BlueScope Buildings North America, Inc. (BlueScope) and Steven Oakeson. Therefore, while there are eight defendants, there are only seven appeals.

In addition, for the purposes of this summary, we will count the defendant Test-Con, Inc., as among the subcontractors. As will be discussed in this opinion, however, Test-Con, Inc., contracted with the plaintiffs directly.

[2] In AC 38208, Girolametti appeals from the decision granting summary judgment in favor of defendant general contractor Rizzo. In AC 38093, the defendant subcontractor Lindade Corporation appeals from the denial of its motion for summary judgment. In AC 38094, the defendant sub-subcontractor Domenic Quaraglia Engineering, Inc., appeals from the denial of its motion for summary judgment. In AC 38095, the defendant subcontractor Michael Horton Associates, Inc., appeals from the denial of its motion for summary judgment. In AC 38097, the defendant Test-Con, Inc., appeals from the denial of its motion for summary judgment. In AC 38098, the defendant sub-subcontractor BlueScope and its employee, Oakeson, appeal from the denial of their motion for summary judgment. In AC 38099, the defendant subcontractor Pat Munger Construction Company, Inc., appeals from the denial of its motion for summary judgment.

[3] Girolametti brought direct claims against VP in both of the cases underlying these appeals, but VP is not a party to any of these appeals.

[4] In the report, Marnicki noted that the building calculations had been completed and that "[a] complete set of building calculations are needed to see if all applied loads were accounted for." Marnicki further noted on November 30, 2009, that he did not have any information from VP regarding the support details of the structure, and whether it could "support units within stress and deflection limits" and asked Girolametti to supply that

information. Further, Marnicki noted: "The VP [drawings] make reference that the end floor joist shop [drawing] needs to be followed. The joist shop [drawings] are not in the box nor did I see [them] in the building [department] file at the time of my visit. The VP [drawing] BJ-1 has no [information] as to floor joist size or bridging. This information is needed to construct the building and to check the installation against." Finally, as to this Marnicki communication, he notes: "Final VP [second] floor joist [drawings] BJ-2 lists joist strut forces adding up to 130,000 [pounds]. There still has not been shown a structural design of the [second] floor slab that both supports the design gravity loads and acts as a diaphragm to transfer to shown seismic loads. This needs to be provided ASAP to show that the building can support all lateral loads. The 130,000 [pounds] of seismic loads are transferred [through] the VP building frames to the first floor and need to be collected by the first floor as designed by Horton." The Marnicki report contained several other notations regarding the building's design and the need for specific information regarding its load carrying capacity.

[5] The award provides that interest would be due at the rate of "5 percent *per day*, or $69.67 per day," though it seems clear that this was a scrivener's error, and based on his calculations, the arbitrator intended to write 5 percent *per annum*. (Emphasis added.)

[6] Horton also brought into the litigation as apportionment defendants Larrabee and Aschettino Associates LLC, neither of which are parties to these appeals. Additionally, Horton filed a second apportionment complaint in which it brought the city of Danbury into the litigation as an apportionment defendant. The city is not a party to these appeals.

Pending before the trial court is an action that Girolametti brought directly against Larrabee, Aschettino, Commercial Metals Company, and Brady Broom. Also pending before the trial court is an action that Girolametti brought directly against the city of Danbury and two of its employees, Leo Null and Edward Shullery. Although these two cases have been consolidated with the actions against Test-Con, Horton, and VP, they are not a part of these appeals.

[7] Rizzo also argues, as an alternative ground for affirmance, that Girolametti waived the claims it now asserts against Rizzo because John Girolametti, Jr., chose not to participate further in the arbitration hearing. Because we affirm the court's determination on the basis of res judicata, we need not address this claim.

[8] See footnote 4 of this opinion.

[9] Lindade previously had filed a motion for summary judgment and memorandum of law in support of its motion on February 28, 2014, in response to Girolametti's third amended complaint. Subsequently, Girolametti filed its fourth amended complaint, and, on November 3, 2014, Lindade filed a supplement to its motion for summary judgment moving the court for summary judgment on that new complaint. In its supplement, Lindade incorporated by reference its February 28, 2014 motion and memorandum of law.

[10] Girolametti also brought a separate action against Test-Con in which he alleged also claims of negligence, breach of contract, and negligent misrepresentation. The matters were later consolidated.

[11] In its motion, Test-Con moved for summary judgment on all counts against it by Girolametti in both civil actions. See footnote 10 of this opinion. The court denied the motion in separate, yet identical, decisions. Test-Con appealed both decisions. Because the claims against Test-Con are the same in each of the underlying cases, Test-Con's arguments for summary judgment are the same for each underlying case, and the court's decisions are identical, we will address the two denials together.

[12] Munger also argues that the court erred in denying its motion for summary judgment because Girolametti's claims against it are all barred by the applicable statute of limitations. Because we reverse the trial court's judgment on the basis of res judicata, we need not address this claim.

[13] Munger previously had filed a motion for summary judgment and memorandum of law in support of its motion on April 25, 2014, in response to Girolametti's second amended complaint in this matter. Subsequently, Girolametti filed its third amended complaint, and, on November 3, 2014, Munger filed a supplement to its motion for summary judgment moving the court for summary judgment on that third amended complaint.

[14] The record reflects that, at the time of the project, VP was a PEB manufacturer. At some point not evident from the record, VP merged with BlueScope with the result that VP became a division of BlueScope. Thus, we treat BlueScope as the corporate entity at interest in this appeal. BlueScope, as the umbrella organization, sells PEBs. Pursuant to the terms of

its agreement with Rizzo, Munger ordered a PEB from BlueScope while Oakeson was a BlueScope employee. As a professional engineer licensed in the state of Connecticut, Oakeson signed and sealed the final erection drawings for the PEB that had been engineered, fabricated and delivered in an unassembled condition to the project site.

In our discussion we do not separately analyze the posture of Oakeson because, as an employee of BlueScope, his liability, if any, would parallel that of his employer for purposes of claims made by Girolametti.

---